DISTRICT OF COLUMBIA,
Petitioner,

v.

Edith Bolling WILSON, Respondent.

No. 11961.

United States Court of Appeals
District of Columbia Circuit.

Argued April 20, 1954.

Decided Nov. 4, 1954.

Mr. Henry E. Wixon, Asst. Corp. Counsel for District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Asst. Corp. Counsel, Washington, D. C., were on the brief, for petitioner.

Mr. Dale D. Drain, Washington, D. C., with whom Mr. B. Woodruff Weaver, Washington, D. C., was on the brief, for respondent.

Before BAZELON, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a petition by the District of Columbia for review of a decision of the District of Columbia Tax Court. D.C. Code, §§ 47–2403, 47–2404 (1951). The respondent Edith Bolling Wilson was there held entitled to a refund of inheritance tax of $7,431.36 paid with respect to $93,000 of United States bonds, assessed under the District of Columbia statute. D.C.Code, § 47–1601 (1951).

The decedent, John Randolph Bolling, was the brother of Mrs. Wilson. For many years prior to his death in 1951 he had resided with her. Their relationship was close. She testified that he handled all her accounts and financial af-

fairs. At all times her brother was authorized to draw checks on her bank account as "attorney."[1] On April 28, 1944, Mrs. Wilson authorized her brother in writing to use $3,000 in her bank account for the purchase of United States Savings Bonds, Series G, "the bonds to be issued in your name, payable to me on death." She added:

"Should I die before you do, then this $3,000 is to be considered an advance on any amount I may leave you under a trust specified in my will.

"The interest on the above will provide you with a small additional income during lifetime, and is to be considered as a gift from me, only the principal being deductible from the Trust referred to above."

On various subsequent dates she gave written authority to her brother to purchase additional Series G bonds, to be issued in the same way and subject to the same conditions. Altogether, using Mrs. Wilson's funds, the decedent purchased bonds totaling $93,000 in maturity value under her authorization.[2] They were registered in his name, payable on death to her. After decedent's death they were all found in an envelope in his safe deposit box, segregated from yet other bonds, the taxability of which is not here in question.

The question here is whether "any interest" in the bonds was "transferred from" a decedent who died "seized or possessed thereof, * * * by law, or by right of survivorship," within the meaning of the inheritance tax statute. D.C.Code, § 47-1601 (1951). The District, in other words, asks us to find that at the time of his death decedent owned an interest in the bonds and that this interest was transferred to Mrs. Wilson by law or by right of survivorship.

■ Certainly the legal title to the bonds in question stood in the name of the decedent at the time of his death, and Mrs. Wilson acquired it on his death. If we may look only at legal title, excluding the actual, equitable, or true ownership, it follows that there was a taxable transfer. But the principle is firmly established that taxation is concerned with real ownership rather than with refinements of title. As it was phrased in Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 43, 60 S.Ct. 51, 55, 84 L.Ed. 20, "the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title." See also Commissioner v. Estate of Holmes, 1946, 326 U.S. 480, 486, 66 S.Ct. 257, 90 L.Ed. 228; National Metropolitan Bank of Wash. v. United States, 1950, 87 F.Supp. 773, 776, 115 Ct.Cl. 396. Our inquiry then—absent some countervailing consideration—must be concerned with real, rather than technical, ownership.

The District contends that Mrs. Wilson intended to, and did, make decedent a complete gift of the bonds. This contention conflicts with a finding of the Tax Court, which said:

"What the petitioner [Mrs. Wilson] intended to do was to give her brother a life interest in the bonds, that is to say, the right to enjoy the interest therefrom, reserving to herself the remainder if he should predecease her, and if she should predecease him the principal of the bonds to be deducted from, or reduce *pro tanto* the trust provision or interest she had made in his favor in her will."

■ We discern no basis upon which this finding may be disturbed. Although Mrs. Wilson testified at the hearing, she did not undertake to explain her inten-

---

1. For a period from December 21, 1945, until March 15, 1948, she maintained a joint account with her brother, though the moneys deposited in the account were her funds exclusively.

2. Respondent testified as to $21,000 of

these bonds that she did not remember whether or not she had expressly authorized her brother to purchase them. But she said that because she had such confidence in him, she was perfectly willing to have him do so.

tion in writing the authorization. Her intent, therefore, must be inferred from the writing and the surrounding circumstances. The written authorization gives no indication that Mrs. Wilson was making a complete *inter vivos* gift of the bonds. On the contrary, it indicates that she was giving him *presently* only the right to interest. The authorization differentiates sharply between the interest and the principal: only the former was denominated a gift.[3] As we have seen, the bonds purchased with Mrs. Wilson's money were found in the decedent's safe deposit box, segregated from those which were clearly his property. There is no evidence that the decedent understood that he had acquired a complete interest in the bonds from her by *inter vivos* gift, and none that he ever treated the bonds as other than his sister's property. The finding of the Tax Court must stand.

■ Decedent then had a right to the income from the bonds during his lifetime (a life interest), plus the right to the principal if Mrs. Wilson predeceased him. When he died these interests were extinguished and Mrs. Wilson came into full ownership of the bonds. Can it be said that decedent died seized of the interests which he held during life and that, at his death, they were transferred to Mrs. Wilson by law or survivorship? The answer is well settled under Federal estate tax law. A life interest held by a decedent—if created by another—is considered to terminate at death; it is not considered to be transferred. Likewise, a contingent remainder in the decedent, given him by another, is considered to lapse at death and not to be a transferable interest at that time.[4] We think District of Columbia v. Lloyd, 1947, 82 U.S.App.D.C. 70, 160 F.2d 581, makes it clear that the same result should follow under the District of Columbia statute.[5] There the decedent's father had given him the right to the income from trust property during his lifetime, the right to take the corpus when he attained a certain age, and the power to appoint the corpus by will. He released the power of appointment and died before he reached the specified age. The District contended that an inheritance tax was due, in part on the theory that the property was transferred from the decedent who died seized and possessed of it. We held otherwise, stating that the right to the income for life gives one an equitable interest in the corpus which terminates with death, rather than being transferred. We further held that the right to receive the corpus conditioned on survival to a certain age is without significance inheritance tax-wise in cases where the income tenant does not survive and fulfil the condition, so as to become entitled to the property.[6] We think the Lloyd decision is controlling here.

■ The District contends that a contrary result is dictated by the Treasury

---

3. The District argues that because Mrs. Wilson used the word "advance" the principal of the bonds must be regarded as an advancement (the principal an outright gift but to be deducted from decedent's share of her estate). The authorization stated, however, that the principal was to be considered an advance if—and evidently only if—Mrs. Wilson predeceased her brother. This, of course, was not the case.

4. See Helvering v. Safe Deposit and Trust Co., 4 Cir., 1941, 121 F.2d 307, 309, reversed on other grounds, 1942, 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266; Commissioner v. Kelly's Estate, 7 Cir., 84 F.2d 958, 960, certiorari denied Helvering v. Kelly, 1936, 299 U.S. 603, 57 S.Ct. 230, 81 L.Ed. 445; Kinney's Estate v. Com-

missioner, 9 Cir., 1935, 80 F.2d 568, 569; Commissioner v. Rosser, 3 Cir., 1933, 64 F.2d 631; Davis v. United States, D.C. S.D.N.Y.1939, 27 F.Supp. 698; Paul, Federal Estate & Gift Taxation, §§ 4.03 and 4.09.

5. Slyder v. District of Columbia, 1951, 88 U.S.App.D.C. 170, 187 F.2d 217, is not to the contrary. The arrangement there was very similar to a joint tenancy. Speaking of it we said: "* * * when either died the house would belong to the other." Moreover, decedent's will left her interest in the property to the taxpayer.

6. We also held that the power to appoint was released and was not held at death so as to render the property taxable.

regulations concerning United States bonds. It relies on 31 Code Fed.Regs. § 315.2 (Supp.1945), which provides: " * * * The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in the regulations in this part, will be considered as conclusive of such ownership and interest. * * * " [7] We do not think, however, that this regulation is applicable as between the brother and sister here. Mrs. Wilson, and not decedent, had furnished the entire funds used to buy the bonds. And the terms of the letter authorizing the decedent to have the bonds issued in his name made it clear that he had the right only to take the income during his lifetime. Had the decedent cashed the bonds during Mrs. Wilson's lifetime, as presumably he could have done under the Treasury regulations, it seems clear that upon application the courts would have declared the proceeds to be held in trust for Mrs. Wilson. Cf. Harrington v. Emmerman, 1950, 88 U.S.App.D.C. 23, 186 F.2d 757; National Metropolitan Bank of Washington v. Stoner, 1949, 85 U.S.App.D.C. 157, 177 F.2d 37; Haliday v. Haliday, 1926, 56 App.D.C. 179, 11 F.2d 565. The Treasury regulations would not have prevented such a decree. They do not purport to be concerned with such a situation. The regulations appear primarily designed to protect the Treasury as against adverse claimants in paying interest and principal of the bonds to the registered owner. The Treasury commonly has no concern with the funds or their disposition once it has paid them to the registered owner. Its contract

has then been fulfilled. In the present case, as in the case supposed, no breach of the regulations is produced. Indeed, where no purpose to defraud the Government has appeared, numerous courts have directed the registered owner to cash United States savings bonds and have ordered the proceeds paid to, and held in trust for, the true owner, notwithstanding the Treasury regulations. See Makinen v. George, 1943, 19 Wash.2d 340, 142 P.2d 910; Union Nat. Bank v. Jessell, 1948, 358 Mo. 467, 215 S.W.2d 474; Katz v. Driscoll, 1948, 86 Cal.App.2d 313, 194 P.2d 822; In re Hendricksen's Estate, 1953, 156 Neb. 463, 56 N.W.2d 711.[8]

For these reasons the decision of the Tax Court will be

Affirmed.

---

7. 31 Code Fed.Regs. § 315.2 (Supp.1943), which applies to some of the older bonds, contains an almost identical provision.

8. The District of Columbia cites and relies upon Davies v. Beach, 1946, 74 Cal.App. 2d 304, 168 P.2d 452, 456; Moore's Adm'r v. Marshall, 1946, 302 Ky. 729, 196 S.W.2d 369, 372, 168 A.L.R. 241; Fidelity Union Trust Co. v. Tezyk, 1947, 140 N.J.Eq. 474, 55 A.2d 26, 27, 173 A.L.R. 546; Harvey v. Rackliffe, 1945, 141 Me. 169, 41 A.2d 455, 459, 161 A.L.R.

296; Parkinson v. Wood, 1948, 320 Mich. 143, 30 N.W.2d 813; Edds v. Mitchell, 1945, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470; Conrad v. Conrad, 1944, 66 Cal.App.2d 280, 152 P.2d 221; Annotations, 168 A.L.R. 245, 173 A.L.R. 550. These cases involve situations where the bonds were transferred in violation of the regulations, or where some other attempted breach of the contract with the United States was involved. No such situation exists here.