Edward G. CHANDLER, etc., Plaintiffs,

v.

UNITED STATES of America,
Defendants.

No. 50176.

United States District Court,
N. D. California.

March 11, 1970.

Robert R. Wood, of Athearn, Chandler & Hoffman, San Francisco, Cal., for plaintiffs.

James L. Browning, U. S. Atty., and John M. Youngquist, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is a suit brought by the plaintiffs, executors, to recover federal estate taxes assessed against the estate of the decedent.

The case is before the court under submission for decision upon a stipulation of facts on file herein.

In 1954 Mary E. Baum, the decedent, had purchased Series E United States Savings Bonds, some of them issued in her name "or" Patricia Ritter, a granddaughter, and others issued in her name "or" Beatrice Baum, also a granddaughter.

It is stipulated that in 1961 Mary E. Baum delivered these bonds to the respective co-owner granddaughters with the intention of making complete, irrevocable inter vivos gifts to them. The bonds, however, were neither redeemed nor reissued prior to Mary E. Baum's death in 1962.

■ The question for decision is whether these bonds, still standing in the names of Mary E. Baum "or" the respective granddaughters, are properly includable in the decedent's gross estate for estate tax purposes or, to put the question another way, whether it was legally possible, under the federal regulations governing such bonds, for the decedent, by manual delivery to the co-owners, to make an inter vivos gift sufficient to divest herself of all rights of ownership therein and to exclude the bonds from the decedent's taxable estate.

Internal Revenue statutes, 26 U.S.C. § 2040, provide in substance and effect that the value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by decedent and any other person.

Treasury Regulations relating to United States Savings Bonds, 31 C.F.R. 315 et seq., provide in substance and effect that the bonds are issued only in registered form as to owner and co-owner; that during the lives of both co-owners the government may pay to both upon their joint request or may pay to either co-owner upon his separate request without requiring the signature of the other co-owner and, upon payment to either, the other shall cease to have any interest in the bond. Provision is also made for reissue during the lives of both co-owners upon the request of both. If either co-owner dies without having surrendered the bond for payment or reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond.

The regulations further provide that the form of registration of the bonds must express the actual ownership of the bonds and that the bonds are "nontransferable and are payable only to the owners named thereon. * * *"

Regulation § 315.13 provides that "a claim against an owner or co-owner of a savings bond and conflicting claims as to ownership * * * as between co-owners * * * will be recognized when established by valid judicial proceedings and payment or reissue will be made upon presentation and surrender of the bond, except as follows: (a) no such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by the regulations in this part upon a surviving co-owner or beneficiary. * * *"

Plaintiffs, relying mainly on Silverman v. McGinnes, 259 F.2d 731 (3rd Cir. 1958), which is precisely in point on the facts and the issue, contend that the regulations, properly construed, do not preclude an otherwise complete and valid inter vivos gift from one registered co-owner to the other and that such a gift, divesting the donor of her interest in the bonds, renders the bonds nontaxable in her estate.

In Silverman, the Court of Appeals, Third Circuit, (Goodrich, Staley and

Hastie) reversing the District Court, recognized that "these regulations are of long standing and have the force of law. The question, however, is the scope of their application. * * * The point is that with regard to payment by the issuer, the government, the provisions of the contract, including the regulations, govern. But the regulations do not apply to the individual rights of persons who under the state law of property become equitably entitled to the proceeds. * * * We think that the preferable view is the conclusion that, as between the decedent's executor and the persons to whom the decedent made a gift, complete except for going through the process of having the bonds reissued, the right of the donees is clear. * * * "

In Estate of Chrysler v. C.I.R., 361 F.2d 508 (2d Cir. 1966), also relied on by plaintiffs here, the court, reversing Estate of Chrysler, 44 T.C. 55, (1965) recognized the rule of *Silverman*. The Tax Court, distinguishing *Silverman*, had held that certain securities, including some United States Savings Bonds in name of decedent "or" certain co-owners, were includable in the estate of the decedent because, unlike *Silverman*, the evidence failed to show a delivery to the co-owner sufficient to indicate that. decedent had divested himself of his potential right of survivorship. On review of the foregoing Tax Court decision, the Court of Appeals, Second Circuit, 361 F. 2d at p. 510, reversed and, citing *Silverman* with approval, held that the evidence was indeed sufficient to indicate that decedent had intended to divest himself of all interest in the securities and that, since the decedent retained no beneficial interest, within the meaning of Int.Rev.Code of 1954, § 2040 or § 2033, the securities should not be subjected to estate tax in the decedent's estate.

In the pending case we have the stipulation of the parties that the decedent *did* deliver the bonds to the co-owners and that she "intended complete and irrevocable gifts of the bonds to the respective co-owners."

In Estate of Avery, 40 T.C. 392 (1963), the Tax Court held that United States Savings Bonds, registered in the name of the decedent "or" his son as co-owner but kept in a box to which both had access, were includable in decedent's estate as jointly held property. The reason for this decision, however, was that there was no evidence that decedent delivered the bonds or intended to release his interest as a potential survivor, citing Estate of Boogher, 22 T.C. 1167 (1954) as similar in that respect. The Tax Court recognized but distinguished *Silverman* on the sole ground that in *Silverman* the evidence *did* show (as the stipulation here also shows), that the donor intended to release his interest as a potential survivor.

The government, relying mainly on Estate of Curry v. United States, 409 F. 2d 671 (6th Cir. 1969) (which, although in point on the facts and the issue, declined to follow *Silverman*) contends that, as held in *Curry,* the ownership interest created in E Bonds is a matter of contract between the United States and purchasers of the bonds; that a valid inter vivos gift from one co-owner to the other cannot be accomplished by manual delivery of the bonds since the bonds were never surrendered and reissued in the name of the donee in accordance with the regulations; that the interest of the purported co-owner donor must therefore be included in his estate for estate tax purposes.

█ Although *Curry* "disagreed with the reasoning and conclusion in *Silverman*," it did not, itself, give any reason for its disagreement except only to reaffirm what it considered to be the rule of Guldager v. United States, 204 F.2d 487 (6th Cir. 1953), that rights or restates in these savings bonds are created by federal contract and controlled by federal law—a proposition with which we agree. *Curry* has been followed as recently as January 12, 1970, by the United States District Court, South Carolina in Florence P. Chambless et al., Executrices of Kolb v. United States, Civil Action No. 68–1044.

Before attempting to resolve the conflict between the *Silverman* and *Curry* rulings, we note certain decisions of the Supreme Court in this field of United States Bonds.

In Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) the Court laid down the principle that, where United States Bonds are concerned, we must look to federal law to determine not only the nature of the obligations, rights and duties of the United States as a party, but also the rights and duties of holders and transferees of such bonds among each other.

In Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) this principle was applied to United States Savings Bonds, registered to Mr. "or" Mrs. Free, in a controversy between the surviving co-owner husband and a son claiming the wife's one-half community interest in the bonds through her estate and under her will. A Texas statute prohibited married persons from taking advantage of the survivorship provisions of the federal savings bond regulations when the purchase price of the bonds had been paid out of community property.

The Texas courts had held that under the federal regulations the savings bonds belonged to the surviving husband, but decreed that he should reimburse the son to the extent of the wife's one-half community interest and making the bonds security for such reimbursement. The Supreme Court reversed, holding that the federal regulations prevailed over state law; that the clear purpose of the regulations is to confer the right of survivorship on the surviving co-owner as one of the inducements to purchase these federal bonds; that the state could not frustrate the parties' attempt to use the bond's survivorship provisions through the expedient of requiring the survivor to reimburse the estate of the deceased co-owner as a matter of law; that this would be state interference with the exercise of the power of the federal government to borrow money.

However, in Bank of America National Trust & Savings Assn. v. Rocco (Parnell), 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed. 2d 93 (1956) the Supreme Court, considering conflicting claims to stolen H.O.L.C. bonds, reversed the Court of Appeals, 226 F.2d 297 (3rd Cir. 1955) and followed a dissent therein written by Goodrich, J. (writer of *Silverman*) and held that, although federal law is paramount and controls in determining the nature of the bond contract and the rights and duties of the United States as a party, federal law does not necessarily govern the rights of private transferees among themselves; that securities issued by the government, although generating immediate interests in the government, also radiate interests in transactions between private parties and that, when litigation is purely between private parties and does not touch the rights and duties of the United States, or is only remotely or speculatively related to the purposes of the federal law, there is no justification for application of federal law to transactions essentially of local concern.[1]

As noted in both *Silverman* and *Curry*, there are many state court cases dealing generally with United States Bonds as subjects of valid gifts and as subjects of taxation. For example, Connell v. Bauer, 240 Minn. 280, 61 N.W.2d 177 (1953), 40 A.L.R.2d 776; also Littlejohn v. County Judge, 79 N.D. 550, 58 N.W.2d 278 (1953), 39 A.L.R.2d 690.

Most of these cases, however (e. g., *Connell*, itself; also Brown v. Vinson,

---

1. In Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964) the Supreme Court, applying an exception recognized in Free, *supra*, i. e., that federal regulations were never intended to be a shield for fraud and that relief could be awarded where the circumstances manifest fraud or breach of trust tantamount thereto, held that the regulations should not be construed as going so far as to permit a husband, without consent of his wife, to use community funds for the purchase of these savings bonds in the name of himself and his brother.

188 Tenn. 120, 216 S.W.2d 748 (1949); Moore's Adm'r v. Marshall, 302 Ky. 729, 196 S.W.2d 369 (1946); Fidelity Union Trust Co. v. Tezyk, 140 N.J.Eq. 474, 55 A.2d 26 (1947); Collins v. Jordan, 110 N.E.2d 825 (Ohio, 1949), cases relied on in Curry, supra; also In re Klarfeld's Estate, 38 Misc.2d 688, 237 N.Y.S.2d 424 (1963), involved situations in which a sole registered owner of a savings bond attempted to transfer it to a stranger to the bond. Since such a donee could not in any event, under the regulations, demand or obtain the proceeds from the Treasurer of the United States, such a transfer would be, not only incomplete as to delivery, but also fairly within the terms and purpose of the federal regulations.

It is not necessary to adopt the broad view expressed by other state courts (some of them cited in Silverman) that, even in such situations, i. e., transfer by a sole owner to a non co-owner donee, the transfer is valid notwithstanding the federal regulations. See, for example, Marshall v. Felker, 156 Fla. 476, 23 So.2d 555 (1945); In re Borchardt's Estate, 179 Misc. 456, 38 N.Y.S.2d 987 (1942); Hausfelder v. Security First National Bank, 77 Cal.App.2d 478, 176 P.2d 84 (Cal.1946); see also, Moore v. Brodrick, 123 F.Supp. 108 (D.Kan.1954); District of Columbia v. Wilson, 94 U.S.App.D.C. 399, 216 F.2d 630 (1954).

In our present case the so-called "transfer" is not from an owner to a stranger to the bond, but from one registered owner to the other registered owner, who, as such, having taken delivery of the bonds, could at any time have demanded and obtained the bond proceeds from the government under the regulations.

In the only cases in which this precise issue has been presented to state courts, a conflict exists: Littlejohn v. County Judge, supra, involving a state estate tax, holds in accord with Silverman,

while Weeks v. Johnson, 146 Me. 371, 82 A.2d 416 (1951), involving a state inheritance tax, holds in accord with Curry.

In Littlejohn, which is precisely in point on the facts and on the issue, the North Dakota Supreme Court held that United States Savings Bonds registered in the names of two co-owners, although ordinarily subject to state estate and inheritance tax laws[2] were not subject to estate tax in the estate of one co-owner who had delivered the bonds to the other co-owner with donative intent, saying "We find nothing in the federal statutes or regulations which prohibits a gift between co-owners named in a bond." (Emphasis added.)

On petition for a rehearing the court dealt even more specifically with the argument that such a transfer would be contrary to the federal regulations, saying: "As we read this and other federal regulations, when a bond of the co-owner type is issued, each co-owner becomes vested with a present interest in the bond and the bond itself and the regulations confer the right of survivorship upon the co-owner. There is nothing in these regulations to prohibit the transfer from one co-owner to the other of his interest in the bond. It is true, of course, that such a transfer cannot in any way impair the right of the United States to discharge its obligation under the bond and regulations by making payment to the survivors but the preservation of that right in the government does not result in the abrogation of the right of one co-owner, by gift inter vivos or otherwise, his interest in jointly owned property and the transfer of such an interest by one co-owner to another is not a violation of the regulatory provisions prohibiting transfer of United States Savings Bonds." (Emphasis added.)

Upon careful consideration of the regulations, including the legislative history and the cases, including related decisions

2. That United States Savings Bonds and interests of registered co-owners therein, are otherwise subject to state inheritance and state estate taxes, is well established. See, 39 A.L.R.2d 699, 700, 702 et seq.

of the Supreme Court, we reach the conclusion that the purported interest of Mary E. Baum in the savings bonds in question should not be subjected to federal estate tax; that on the stipulated facts said decedent has retained no interest in said bonds; that the federal regulations do not preclude a donative transaction whereby one registered co-owner divests herself of all interest to the other co-owner.

■ The regulations provide that these bonds are "non-transferable and are payable only to the owners named thereon." We do not consider that "non-transferable" as used in the regulations, is applicable here. Read as a whole, and with a view to the purposes of the regulations, the term "transferable," means a transfer by one or more of the registered co-owners to strangers to the bonds, i. e., to persons who are *not* "owners named thereon." It does not apply to transactions solely between registered co-owners either of whom could at any time have cashed the bonds, or had them reissued without even the signature of the other.

Nor do we consider that the regulations preclude judicial determination establishing claims against a co-owner or conflicting claims as to ownership as between co-owners. Quite to the contrary, it will be noted that the regulations positively provide that judicial determination of this kind "will be recognized," the only *exception* being that such judicial proceedings will not be recognized "if they would give effect to an attempted voluntary transfer inter vivos of the bond *or* would defeat or impair the rights of survivorship conferred by the regulations in this part upon a surviving co-owner or beneficiary."

As already noted, the transaction here is not a "transfer inter vivos *of the bond*" and, therefore, the judicial determination here involved would not "give effect to" any such transfer as contemplated by the regulations.

Nor would the judicial determination here involved "defeat or impair the rights of survivorship * * * (of) a surviving co-owner." On the contrary, the rights of the surviving registered co-owners are here recognized and effectuated and in all probability they have already either cashed their bonds or had them reissued to themselves. There is, therefore, nothing here which could, within the meaning of the Supreme Court in Free v. Bland, *supra*, "frustrate" a co-owner's right to enjoy the bonds' survivorship provisions—as was clearly the situation in Free v. Bland.

Nor is there any element here which could, within the meaning of Free v. Bland, defeat the purpose of the federal regulations by subjecting the government to claims of persons other than, as provided in the regulations, claims by a registered owner.

Nor is there any element here which would possibly affect adversely the saleability of these government bonds.

In short, we find nothing in either the language, or the history or the purpose of the regulations which reasonably calls for exacting an estate tax from the estate of Mary E. Baum under the stipulated circumstances of this record. There is no relationship between exaction of such a tax and the purposes of the regulations. Any such relationship as might be conceived would be, at the most, and as stated by the Supreme Court in Bank of America v. Rocco (Parnell), *supra*, so "remotely or speculatively related to the purposes of the federal law * * * that * *. * there is no justification for application of federal law to transactions essentially of local concern."

For the foregoing reasons the court concludes from the stipulated facts that judgment should be and is hereby rendered for plaintiff.