152

ESTATE OF MAE ELLIOTT, MRS. J. E. CRABTREE, A.K.A. MRS. MARY KATHRYN CRABTREE, EXECUTRIX, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Dockets Nos. 5731–69—5736–69.   Filed October 28, 1971.

*Joe H. Staley, Jr.*, and *A. E. Aikman*, for the petitioners.
*Roy E. Graham*, for the respondent.

DAWSON, *Judge:* In these consolidated cases the respondent determined a Federal estate tax deficiency of $79,266.31 against the Estate of Mae Elliott, Mrs. J. E. Crabtree, a.k.a. Mary Kathryn Crabtree, executrix, in docket No. 5731–69. In respect of such determination, respondent also asserted, pursuant to section 6901, I.R.C. 1954,[2] the following fiduciary and transferee liabilities:

| Petitioner | Docket No. | Amount |
|---|---|---|
| Mrs. J. E. Crabtree, sole heir, a.k.a. Mary Kathryn Crabtree, sole heir of Mae Elliott | 5732–69 | $79, 266. 31 |
| Mrs. J. E. Crabtree, a.k.a. Mary Kathryn Crabtree | 5733–69 | 79, 266. 31 |
| Mrs. J. E. Crabtree, transferee a.k.a. Mary Kathryn Crabtree, transferee | 5734–69 | 79, 266. 31 |
| Elliott Edley Crabtree, transferee in the Estate of Mae Elliott | 5735–69 | 14, 000. 00 |
| Mrs. Mary Elaine Crabtree Aduddell, transferee in the Estate of Mae Elliott | 5736–69 | 14, 000. 00 |

[1] Cases of the following petitioners are consolidated herewith: Mrs. J. E. Crabtree, sole heir, a.k.a. Mary Kathryn Crabtree, sole heir of Mae Elliott, docket No. 5732–69; Mrs. J. E. Crabtree, a.k.a. Mary Kathryn Crabtree, docket No. 5733–69; Mrs. J. E. Crabtree,

The values of certain properties for estate tax purposes have been agreed to by the parties in their stipulation of facts. At issue is whether the value of certain U.S. savings bonds (series E), registered in coownership form to the decedent or her daughter or her grandchildren, should be included in the decedent's gross estate for Federal estate tax purposes under the provisions of section 2040 of the Code. The resolution of this issue will determine whether the respondent has met his burden of proving under section 6501(e)(2) that there was omitted from the decedent's gross estate an amount in excess of 25 percent of the gross estate reported in the Federal estate tax return.

FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

The petitioner in docket No. 5731–69 is the Estate of Mae Elliott. Mrs. J. E. Crabtree is the executrix of the estate. The Federal estate tax return for the Estate of Mae Elliott was timely filed on October 8, 1963, with the district director of internal revenue at Dallas, Tex.

Mrs. J. E. Crabtree, who is also known as Mary Kathryn Crabtree (hereinafter referred to as Kathryn), is the petitioner in docket Nos. 5732–69 through 5734–69 and is the sole heir of Mae Elliott and the fiduciary and transferee in law and equity of the property of the Estate of Mae Elliott. At the time she filed her petitions herein she resided in Dalhart, Tex.

Elliott Edley Crabtree (hereinafter referred to as Elliott) is the petitioner in docket No. 5735–69 and is transferee in the Estate of Mae Elliott. At the time his petition was filed herein he was a resident of Dalhart, Tex.

Mary Elaine Crabtree Aduddell (hereinafter referred to as Elaine), the petitioner in docket No. 5736–69, is also a transferee in the Estate of Mae Elliott and was a resident of Dalhart, Tex., at the time her petition was filed in this proceeding.

Mae Elliott was the mother of Mrs. J. E. Crabtree (Kathryn), and the grandmother of Elliott and Elaine.

Mae Elliott died testate on July 7, 1962, at which time she was a resident of Stratford, Tex. Her sole heir, Kathryn, survived her. Her estate has not been probated. From January 27, 1950, until her death on July 7, 1962, Mae Elliott rented a safe-deposit box in her

---

Transferee, a.k.a. Mary Kathryn Crabtree, Transferee, docket No. 5734–69; Elliott Edley Crabtree, Transferee in Estate of Mae Elliott, docket No. 5735–69; and Mrs. Mary Elaine Crabtree Aduddell, Transferee in Estate of Mae Elliott, docket No. 5736–69.

² All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

own name at the First State Bank of Stratford, Tex. The rental agreement between the bank and Mae Elliott provided, in part, that—

no person other than the renter, his duly appointed deputy, as shown by the records of the Safe Deposit Department, or the legal representative of the renter in the event of his death, incompetency, insolvency or other disability, shall have access to the box as hereinafter expressly stipulated.

There is no evidence that Mae Elliott ever appointed a deputy who had a right to enter her safe-deposit box. There is also no evidence that Mae Elliott at any time authorized the bank in writing to admit anyone to her safe-deposit box. Mae Elliott paid the rental on the safe-deposit box from January 27, 1950, until her death on July 7, 1962. There were only two keys to the safe-deposit box and, according to the contract with the bank, both of them were received by Mae Elliott when she rented the box.

From November 1949 through October 1959, Mae Elliott purchased with her own funds various U.S. savings bonds, series E, which were issued and registered in her name jointly with her daughter, Kathryn, or one of her grandchildren, Elliott and Elaine. The bonds always remained in coownership form. At the time of Mae Elliott's death, the bonds, having a total value of $95,105.60, were unredeemed and located in the safe-deposit box at the First State Bank of Stratford, Tex. The contents of the box were inventoried on July 10, 1962, and turned over to Kathryn.

Kathryn lived close to her mother, Mae Elliott, and often visited her. Kathryn was familiar with a diary which was kept by Mae Elliot for a number of years. The diary was found by Kathryn in her mother's home shortly after her death. The diary contained an entry dated August 23, 1956, which reads: "Gave Kathryn keys to safety box since bonds belong to her—Elliott & Elaine." The keys were manually delivered to Kathryn. Both keys were in her dominion and control from August 23, 1956, until Mae Elliott's death. On several occasions Mae Elliott told Kathryn, Elliott, and Elaine the bonds in the box were theirs. After delivery of the keys to Kathryn, Mae Elliott never entered the safe-deposit box again, nor did she ever ask Kathryn for the keys. If Mae Elliott had requested the bank to open the safe-deposit box, she would have been given access thereto and would have been able to take the bonds had she so desired.

Kathyrn entered the safe-deposit box on several occasions both prior to and after August 23, 1956. She never gave the keys to the box to anyone after she received them from her mother.

There is no evidence that Mae Elliott ever filed a Federal gift tax return reporting any gift of the bonds to Kathryn, Elliott, and Elaine.

Upon Mae Elliott's death, Kathryn claimed as her property the bonds registered in the name of the decedent jointly with her; and Elliott and Elaine each claimed as their own property the bonds registered in their names jointly with the decedent.

The gross amount reported in the Federal estate tax return of Mae Elliott was $156,685.73. The U.S. savings bonds (series E) in question had a total value of $95,105.60 at the time of Mae Elliott's death on July 7, 1962. The value of these bonds was not included in the Federal estate tax return of Mae Elliott. In his notice of deficiency and notices of fiduciary and transferee liabilities mailed on August 15, 1969, respondent determined that the value of the bonds was includable in the decedent's gross estate under section 2040 of the Code.

## OPINION

The basic issue confronting us in these cases is whether the value of certain U.S. savings bonds (series E), registered in the names of the decedent and her daughter or grandchildren as coowners, should be included in the gross estate of Mae Elliott for Federal estate tax purposes under the provisions of section 2040.[3] In resolving this issue we will consider, first, whether it was legally possible, under the Treasury regulations governing such bonds, for the decedent, as a coowner, to make a valid inter vivos gift sufficient to divest herself of all rights of ownership in the bonds and to transfer such interest to the other coowner without surrendering the bonds and having them reissued in accordance with the Treasury regulations. Secondly, we will consider whether, in any event, the decedent made valid inter vivos gifts of the savings bonds to her daughter and grandchildren under Texas law.

1. *Applicability of Treasury savings bond regulations.*—The Treasury regulations relating to U.S. savings bonds, 31 C.F.R. sec. 315, *et seq.*, which were in effect in 1956, the alleged year of the gifts, provided that bonds may be registered in coownership form only in the alternative [4] and that the Government may pay the full amount of each

---

[3] SEC. 2040. JOINT INTERESTS.

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth : * * *

[4] Sec. 315.7. *Authorized forms of registration.* Subject to any limitations or restrictions contained in these regulations on the right of any person to be named as owner, coowner, or beneficiary, savings bonds may be registered in the following forms :

(a) *Natural persons.* In the names of natural persons in their own right.

 * * * * * * *

(2) *Coownership form—two persons (only).*—In the alternative as coowners.
Examples. John A. Jones or Mrs. Ella S. Jones. * * *
No other form of registration establishing coownership is authorized.

156

bond so registered to either coowner upon his individual request.[5] They also provide that the bonds are not transferable,[6] and that no judicial determination will be recognized which will give effect to a "transfer inter vivos of a bond" or will defeat or impair the rights of survivorship conferred by the regulations on a surviving coowner.[7] The regulations further provide that certain claims against a coowner will be recognized when established by valid judicial proceedings.

To properly apply the Treasury regulations, their purpose and judicial interpretations thereof must be considered as well as the literal meaning of the words. During the hearings held in 1935 to amend the Second Liberty Bond Act, Secretary of the Treasury Morgenthau testified before the Senate Finance Committee, obviously concerned over Government liability regarding such bonds, that the purpose for making the bonds nontransferable was to prevent them from being "dealt in." See Hearings before Senate Committee on Finance on H.R. 4304, 74th Cong., 1st Sess., p. 17–18 (1935).

The Treasury regulations have been repeatedly referred to in judicial decisions as having for their purpose the prevention of suits against the Government between claimants to Government bonds, and to protect the interests of the bondholders. *In re Neglia's Estate*, 170 A.2d 357 (Sup. Ct. Pa., 1961) ; *Silverman* v. *McGinnes*, 259 F.2d 731 (C.A. 3, 1958) ; *Estate of John H. Boogher*, 22 T.C. 1167, 1169 (1954) ; *District of Columbia* v. *Wilson*, 216 F.2d 630, 633 (C.A.D.C. 1954). In addition, the regulations have the further effect of defining the rights of the registered coowners as between themselves, for these rights inter sese are the reflection of the contract obligation of the United States to the coowners.

---

[5] Sec. 315.60. *During the lives of both coowners.* A savings bond registered in coownership form, for example, "John A. Jones or Mrs. Mary C. Jones," will be paid or reissued during the lives of both, as follows :

(a) *Payment.* The bond will be paid to either upon his separate request, and upon payment to him the other shall cease to have any interest in the bond. If both request payment jointly, payment will be made by check drawn to their order jointly, for example, "John A. Jones and Mrs. Mary C. Jones."

[6] Sec. 315.15 *Limitation on transfer or pledge.* Savings bonds are not transferable and are payable only to the owners named thereon, except as specifically provided in the regulations in this part and then only in the manner and to the extent so provided. A savings bond may not be hypothecated, pledged as collateral, or used as security for the performance of an obligation, except as provided in § 315.16.

[7] Sec. 315.20 *General.* (a) No judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary, and all other provisions of this subpart are subject to this restriction. Otherwise, a claim against an owner or coowner of a savings bond and conflicting claims as to ownership of, or interest in, such bond as between coowners or between the registered owner and beneficiary will be recognized, when established by valid judicial proceedings, upon presentation and surrender of the bond, but only as specifically provided in this subpart.

(b) Neither the Treasury Department nor any agency for the issue, reissue, or redemption of savings bonds will accept notices of adverse claims or of pending judicial proceedings or undertake to protect the interests of litigants who do not have possession of a bond.

Several cases have considered the applicability of the Treasury regulations to factual situations similar to the one before us. There has developed a sharp conflict among the decided cases. In the cases relied on by respondent, the courts, literally applying the language of the Treasury regulations, have held that U.S. savings bonds registered in coownership form and not redeemed or reissued prior to the decedent's death are includable in the decedent's gross estate for Federal estate tax purposes. See, e.g., *Estate of Curry* v. *United States*, 409 F.2d 671 (C.A. 6, 1969); *Chambless* v. *United States*, an unreported case (S.D. Cal. 1970, 25 A.F.T.R. 2d 70–1512, 70–1 U.S.T.C. par. 12655). By contrast, in the cases relied on by the petitioners, the courts have construed the language of the Treasury regulations to permit a transfer (gift) between coowners. See, e.g., *Silverman* v. *McGinnes*, *supra; Chandler* v. *United States*, 312 F.Supp. 1263 (N.D. Cal. 1970), on appeal (C.A. 9).

In the instant cases respondent urges us to follow the decisions in *Curry* and *Chambless*, while the petitioners argue that we should embrace the rationale of *Silverman* and *Chandler*. We realize the question is close and important. We are at the crossroads and must select the path we will follow. Sound arguments can be made on both sides of the question.

To support his contention that the Treasury regulations apply herein, respondent cites *Free* v. *Bland*, 369 U.S. 663 (1962). In that case the specific issue was whether the Treasury regulations creating a right of survivorship in U.S. savings bonds preempted any inconsistent Texas community property law by virtue of the supremacy clause, article VI, clause 2, of the Constitution of the United States. That issue was decided on a narrow ground relating to the second clause of the first sentence of 31 C.F.R. sec. 315.20, with respect to which the Supreme Court said that "the state law which prohibits a married couple from taking advantage of the survivorship provisions of U.S. savings bonds merely because the purchase price is paid out of community property must fall under the supremacy clause." *Free* v. *Bland, supra* at 670. Under the facts of the present cases, a determination that a gift inter vivos could be made would not "defeat or impair the rights of survivorship * * * [of] a surviving co-owner." 31 C.F.R. sec. 315.20. Here the surviving coowners were entitled to redeem the bonds and none of their rights as survivors of the decedent are in issue, only the extent of their rights in regard to the taxable estate of the decedent. In our opinion it is doubtful whether *Free* v. *Bland, supra*, covers the precise situation involved in these cases, although the Supreme Court used some rather broad language.

Respondent also relies on two opinions of this Court, namely, *Estate of John H. Boogher, supra*, and *Estate of Oliver W. Avery*, 40

T.C. 392 (1963). In the *Boogher* case we concluded that savings bonds registered in coownership form until the death of the decedent were includable in his gross estate under section 2040 because there was no evidence that the decedent transferred his rights as potential surviving coowner simply by delivering possession of the bonds to the other coowners. In the *Avery* case the decedent purchased series E savings bonds as coowner with his son and daughter and the bonds were registered in coownership form. Both the decedent and the other coowner had access to the safe-deposit box where the bonds were held until the decedent's death. It was admitted that the coowners (son and daughter) could have cashed the bonds at any time prior to the decedent's death. We concluded (pp. 402–403) :

> The *Silverman* case, proceeded on the interpretation that the evidence of a gift was sufficient to show that had the donor cashed the bonds he would be compelled to hold the proceeds in trust for the donees of his *inter vivos* gift. We cannot say that the evidence here is sufficient to establish that this decedent intended to or did release his interest as potential survivor. Oliver was married before these purchases began, and Sallie was married during part of the period during which the bonds were purchased. Since Oliver and Sallie were adults at the time, there is no apparent reason why, if completed gifts were intended, the decedent retained a right of coownership as to every bond. We think the facts in this case are more nearly controlled by our decision in the *Boogher* case, and hold that the value of these bonds is includable in the gross estate.

In neither *Boogher* nor *Avery* did this Court determine that it was barred by the Treasury regulations from considering whether a valid gift could be made. In fact each case was determined in the Commissioner's favor on the ground that there was not sufficient evidence to support a finding that the decedent during his lifetime intended to or did yield his interest as potential survivor.

In the *Estate of Curry* v. *United States, supra,* which is factually similar to the present cases, the decedent had purchased series E savings bonds with her funds and the bonds were issued in coownership form and registered in her name and in the name of her nephew as coowner. The executors contended that the decedent had divested herself of all ownership of and interest in the bonds merely by manually delivering them during her lifetime to her coowner, with the intention of vesting sole ownership in him. The Court of Appeals for the Sixth Circuit rejected this contention and, based upon the Treasury regulations and the binding Federal contract, said:

> At the death of the decedent the bonds remained in the name of the decedent or her nephew. At any time during her lifetime, decedent could have cashed the bonds. All of the bonds originally were owned by her. It is not contended that any of the bonds were purchased with money belonging to the nephew.
>
> We therefore hold that the bonds were subject to federal estate taxes as a part of the taxable estate of decedent under 26 U.S.C. § 2040 (n. 1, *supra*).

Relying upon *Silverman* v. *McGinnes, supra,* 259, F.2d 731 (3d Cir.), the District Court overruled the Government's motion for summary judgment on the ground that an issue of fact existed as to whether a valid gift inter vivos was accomplished. Thereafter, by agreement of the parties and without hearing evidence on the gift inter vivos issue, a final judgment was entered in favor of the taxpayer and against the United States.[3] We disagree with the reasoning and conclusion in *Silverman* v. *McGinnes, supra,* and decline to follow it.

We reaffirm the holding of this Court in *Guldager* v. *United States, supra,* 204 F.2d 487, that an estate created in Series E bonds is a matter of contract between the United States and the purchaser of the bonds. The bonds are nontransferable. A valid gift inter vivos cannot be accomplished by manual delivery to a donee unless the bonds also are surrendered and reissued in the name of the donee in accordance with the Treasury Regulations (Appendix A). Ohio law governing gifts inter vivos has no application in the present case. Federal law is controlling and the bonds cannot be transferred in any manner except as authorized by the Treasury Regulations. [Footnote omitted.]

The rationale of the *Curry* decision was followed by the District Court in *Chambless* v. *United States, supra.*

On the other side of this issue, the Court of Appeals for the Third Circuit held in *Silverman* v. *McGinnes, supra,* that the Treasury regulations did not bar a determination as to whether there was a valid inter vivos gift under State law and concluded that the decedent in that case had effectively conveyed his right of survivorship to the coowner of the bonds. It commented as follows (259 F.2d at 734–735):

We think that the preferable view is the conclusion that as between the decedent's executor and the persons to whom the decedent made a gift, complete except for going through the process of having the bonds reissued, the right of the donees is clear. The transaction is equivalent to an express trust declared by the decedent even though trust terms were not used.

Does that relieve the estate of the decedent from an estate tax which includes the value of these bonds? The district judge points out that the regulation already cited "does not contain any intimation that the Treasury Department shall be considered as though it were one personality for borrowing money and a different one for collecting it by taxing." Of course that is true. Nevertheless, if the analysis above is correct, the decedent, prior to his death, was not equitably entitled to any of the proceeds of these bonds. Had he cashed the bonds, he and his representative after him would have been compelled to hold the proceeds in trust for the donees of his inter vivos gift. In essence the decedent, prior to his death, had effectively conveyed his right of survivorship to the co-owners of the bonds. The Estate Tax attaches to the economic benefit to be derived from property rather than the technical ramifications of title.[9] The decedent had parted with his economic interest prior to his death, and in the words of the Internal Revenue Code of 1939, "the extent of the interest therein held" by the decedent was nothing. * * *

[Footnote omitted.]

The District Court in the *Chandler* case agreed with *Silverman* and explained its position by determining that the words "transfer of a bond," as stated in the Treasury regulations, do not preclude a

donative transaction whereby one registered coowner divests himself of all interest to the other coowner. The District Court further stated that read "as a whole, and with a view to the purposes of the regulations, the term 'transferable' means a transfer by one or more of the registered co-owners to strangers to the bond." This would not deviate from the goal of protecting the Government from claimants other than those listed as registered coowners, since redemption by one coowner would exempt the Government from any claim by the coowner. 31 C.F.R. sec. 315.60(a). It reasoned that this type of transfer is not a "transfer of a bond" but merely the gift of one coowner's interest in the bond to another coowner, and, as such, would not result in disputes between claimants to the Government bonds and would not subject the Government to litigation to determine ownership.

We cast our lot with the Court of Appeals for the Sixth Circuit. We agree with the reasoning and conclusion of the *Curry* case. We think it is the sounder view. It cannot be doubted that the provisions of the Treasury regulations plainly enunciate a rule as to the ownership of U.S. savings bonds and that ownership of the bonds is fixed by the regulations in effect when the bonds were issued. The unconditional and absolute Federal rule that the "actual ownership of and interest in the [series E] bond" of a registered and inscribed coowner under the regulations is deemed as "conclusive" was emphatically made known to purchasers of such bonds throughout the country. It is clearly stated on the reverse side of a series E bond that it is nontransferable except pursuant to the Treasury regulations, and on its face there is engraved in rather large capital letters that the bond is "Not Transferable." It is our view that it was not the intention of the Congress, as expressed in *Silverman*, that such Federal law of ownership should be subjected to rules pertaining to the devolution of personal property in the various States, or to varying interpretations of State law, or by any other circumvention of the plain language of the Treasury regulations which fix the ownership of the bonds. We think the holding in the *Silverman* case would "defeat the purposes of the Act of Congress and the Treasury regulations, and would open the door for evasion of plainly expressed restrictions on transfer [and the conclusiveness of the ownership of the registered coowner]." *Moore's Adm'r* v. *Marshall*, 196 S.W.2d 369, 372 (Ky. 1946).

In accordance with the provisions of the Treasury regulations and the Treasury Offering Circular, of which we take judicial notice, it is indisputable that at any time up until the moment prior to the decedent's death, the decedent, if she had presented the series E bonds in question to the United States, would have received the redemption

value of the bonds. It is also indisputable, if the decedent's coowning daughter and grandchildren had predeceased her, that under the provisions of the Federal contract the decedent would have become the sole and absolute owner of the bonds, and no rights to or interest in the bonds would pass to the executors or administrators of the deceased daughter or grandchildren. By delivering the keys to her safe-deposit box to Kathryn and by writing in her diary that the bonds belonged to Kathryn, Elliott, and Elaine, the most the decedent did was to make an incomplete inter vivos gift under the binding Federal contract.

In view of the unambiguous and unequivocal provisions of the Treasury regulations and the Treasury Offering Circular, up until the moment of the decedent's death, the actual ownership of and interest in the series E bonds jointly vested in the names of the registered coowners because: (1) The form of the registration used must express the actual ownership of and interest in the bond (31 C.F.R. sec. 315.5); (2) the form of registration will be conclusive of the registered coowner's ownership and interest in the bond (31 C.F.R. sec. 315.5); (3) series E bonds are payable only to the registered owners named thereon (31 C.F.R. sec. 316.9); (4) the Treasury Department will recognize only the inscribed owners during their lifetime (31 C.F.R. sec. 316.9); and (5) if both coowners die in a common disaster under such conditions that it cannot be established which coowner died first, the bond will be considered as belonging to the estates of both coowners (31 C.F.R. sec. 315.62).

In our judgment the rule proclaimed by the Sixth Circuit in the *Curry* case is legally correct. It is also fair and practical. It will promote certainty, predictability, and uniformity.[8] It will eliminate conflicting decisions based on differing factual patterns and the vagaries of State law.[9]

With respect to U.S. savings bonds, series E, issued in coownership form and registered in the names of two specified coowners, we conclude that under the terms and conditions of the Federal contract—a constituent part of which are the Treasury regulations—one coowner cannot divest himself of all ownership of and interest in the bonds, and vest sole ownership in them in the other coowner, by making a

---

[8] There are over 500 million series E bonds held by millions of persons, and about 75 percent of these are issued in coownership form and registered in the names of two coowners.

[9] On the very issue before us the decisions of various State courts are divided, although the majority rule seems to be that U.S. savings bonds cannot be the subject of an inter vivos gift under State law because the Treasury regulations prohibit their transfer. See Annot., 40 A.L.R.2d 788; 39 A.L.R.2d 698; and 168 A.L.R. 245. See, in particular, *Weeks* v. *Johnson*, 146 Me. 371, 82 A.2d 416 (1951); *Katz* v. *Driscoll*, 86 Cal. App.2d 313, 194 P.2d 822 (1948); and *Conrad* v. *Conrad*, 66 Cal. App.2d 280, 152 P.2d 221, 223–224 (1944).

delivery, actual or constructive, during his lifetime of the registered bonds to the other coowner with the intent of making an inter vivos gift. The provisions of section 315.60(b)(1) of the Treasury regulations expressly provide the *only* manner in which a registered coowner may, during his lifetime, transfer all of his incidents of ownership of and in series E bonds to the other registered coowner.[10] Mae Elliott did not transfer her coownership bonds to Kathryn, Elliott, and Elaine during her lifetime as provided in the Treasury regulations. Her failure to do so results in the inclusion, pursuant to the provisions of section 2040 and section 20.2040-1(b), Estate Tax Regs.,[11] of the value of the bonds in her gross estate for Federal estate tax purposes.

2. *Inter vivos gifts under Texas law.*—We think our conclusion on the principal issue raised by the parties is dispositive of these cases. However, even if the Treasury savings bond regulations are not controlling, we would also conclude that Mae Elliott did not make completed inter vivos gifts under Texas law of the bonds to her daughter and grandchildren. The Texas courts have uniformly held that in order to constitute a valid gift inter vivos there must be (1) an intention on the part of the donor to vest in the donee, unconditionally and immediately, the ownership of the property and (2) a delivery of possession by the donor to the donee of the subject matter of the gift. *Wells* v. *Sansing*, 151 Tex. 36, 245 S.W.2d 964 (1952); *Forbes* v. *Forbes*, 430 S.W.2d 947 (Tex. Civ. App. 1968). It is also settled that the burden of proving a gift inter vivos is upon the party claiming under the gift. *Powell* v. *Wiley*, 141 Tex. 74, 170 S.W.2d 470 (Tex. Civ. App. 1943).

Granted that Mae Elliott had a sufficient intention to make gifts of the series E coownership bonds to Kathryn, Elaine, and Elliott on August 23, 1956, there was not an unconditional delivery to the alleged donees of possession of the bonds contained in the safe-deposit box at that time. See *Wells* v. *Sansing, supra;* and Tex. Rev. Civ. Stat. art. 3998, which provides: "No gift of any goods or chattels shall be valid unless by deed or will, duly acknowledged or proven up and recorded, or unless actual possession shall have come to, and remained with, the donee or some one claiming under him." Delivery

---

[10] See 31 C.F.R. sec. 316.9, which provides as follows:

"*Nontransferability. Bonds of Series E may not be* used as collateral for a loan or as a security for the performance of an obligation, or *transferred inter vivos by voluntary sale or gift,* discounted or disposed of in any manner other than as provided in the regulations governing United States Savings Bonds. Except as provided in said regulations, the Treasury Department will recognize only the inscribed owner, during his lifetime, and thereafter his estate or heirs." (Emphasis added.)

[11] Sec. 20.2040-1(b), Estate Tax Regs., provides, in part, that "Section 2040 specifically covers * * * a bond * * * in the name of the decedent and any other person and payable to either or the survivor."

may be constructive or symbolical, but *only* where "the thing is incapable of actual delivery, or where the situation of the parties or circumstances of the case will not admit of it." *Bishop* v. *Bishop*, 350 S.W.2d 578, 579 (Tex. Civ. App. 1961); see also *Harmon* v. *Schmitz*, 39 S.W.2d 587 (Tex. Civ. App. 1931). Here the bonds could easily have been delivered into the actual possession of Kathryn and the grandchildren. Mae Elliott simply did not divest herself of all dominion and control over the bonds. They remained in her safe-deposit box to which she had access and continued to be registered in her name as coowner. Hence the conclusion is well-nigh compelling that she did not make, even under Texas law, valid inter vivos gifts of the bonds to her daughter and grandchildren.

3. *Statute of limitations.*—We have held that the value ($95,105.60) of the savings bonds is includable in the decedent's gross estate. This amount was omitted from the gross estate and it is in excess of 25 percent of the gross estate stated ($156,685.73) in the Federal estate tax return. Consequently, respondent had 6 years from the time the estate tax return was filed in which to assess an estate tax deficiency. See sec. 6501(e)(2), 1954 Code. The Federal estate tax return was filed on October 8, 1963. Respondent's statutory notice of the estate tax deficiency was mailed to petitioners on August 16, 1969. It therefore follows that the assessment of the estate tax deficiency is not barred by the statute of limitations.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

TANNENWALD, *J.*, concurring: I agree with the result reached by the majority because I do not believe that there was a completed gift under Texas law. Moreover, even if there had been a physical delivery of the bonds, that would have been insufficient, unless accompanied by other evidence that the transferor also intended to relinquish his right of survivorship. *Estate of John H. Boogher*, 22 T.C. 1167 (1954).

In my opinion, the majority has unnecessarily decided the legal issue of the broad applicability of the Treasury bond regulations. The purported transfer herein was not to a stranger but to a registered coowner of the bond. The contrast between these two types of transfer is clearly articulated by Judge Sweigert in *Chandler* v. *United States*, 312 F. Supp. 1263 (N.D. Cal. 1970).

RAUM, FAY, STERRETT, and QUEALY, *JJ.*, agree with this concurring opinion.