UNITED STATES *v.* CHANDLER ET AL.

No. 72–438.   Decided January 22, 1973

PER CURIAM.

This case presents a narrow federal estate tax issue: Does a registered co-owner of a United States Savings Bond, Series E, by physical *inter vivos* delivery of the bond to the other registered co-owner, with intent to effectuate a gift, but without reissuance of the bond, succeed in divesting himself of the incidents of ownership so that, at his subsequent death, the value of the bond is not includable in his gross estate under the joint interests provisions of § 2040 of the Internal Revenue Code of 1954, 26 U. S. C. § 2040?

The United States District Court for the Northern District of California ruled that the co-owner had accomplished this divestiture, and it rendered judgment in favor of the taxpayer-estate.   312 F. Supp. 1263 (1970). The United States Court of Appeals for the Ninth Circuit affirmed for the reasons set out in the District Court's opinion.   460 F. 2d 1281 (1972).   The Sixth Circuit theretofore had held to the contrary on a fact situation similar to that of the present case.   *Estate of Curry* v. *United States,* 409 F. 2d 671 (1969).   There

are other decisions to like effect. *Estate of Elliott* v. *Commissioner,* 57 T. C. 152 (1971), reviewed by the court and now pending on appeal to the Fifth Circuit; *Chambless* v. *United States,* 70–1 U. S. T. C. ¶ 12,655, 25 A. F. T. R. 2d 70–1512 (SC 1970). The Third Circuit, however, previously had ruled sweepingly along the lines followed by the Ninth Circuit here. *Silverman* v. *McGinnes,* 259 F. 2d 731 (1958).

We grant certiorari and reverse.

I

The decedent, Mary E. Baum, purchased several United States Savings Bonds, Series E, in 1954. She had them issued in the familiar co-ownership form. Some were in the names of Mrs. Baum "or" Patricia Ritter, a granddaughter. Others were in the names of Mrs. Baum "or" Beatrice Baum, another granddaughter. In 1961 the decedent delivered these bonds to the respective granddaughters, with the intention of making complete, irrevocable, *inter vivos* gifts.[1]

Mrs. Baum died in 1962. At her death the bonds were still in the original co-ownership form. They had not been redeemed. Neither had they been reissued, as they might have been under the applicable regulations, in the names of the respective granddaughters as sole owners.

The respondents, who are executors of the decedent's will, disclosed the bonds in the federal estate tax return filed for the decedent's estate but did not include them in the gross estate. On audit, the Internal Revenue Service ruled that the bonds were includable. A result-

---

[1] It is stipulated that these deliveries were not made in contemplation of death. Section 2035 of the 1954 Code, 26 U. S. C. § 2035, relating to transfers in contemplation of death, therefore has no application.

ing deficiency in estate tax was assessed and was paid by the respondents. The present suit for refund of the tax attributable to the inclusion of the bonds was instituted in due course.

## II

Section 2040 is the governing statute. At the time of the decedent's death the section provided that there shall be included in a decedent's gross estate, with exceptions not here pertinent, "the value of all property . . . to the extent of the interest therein held as joint tenants by the decedent and any other person . . . in their joint names and payable to either or the survivor . . . ."

Title 31 U. S. C. § 757c (a) [2] authorizes the Secretary of the Treasury to issue United States Savings Bonds "in such manner and subject to such terms and conditions consistent with subsections (b)–(d) of this section, *and including any restrictions on their transfer,* as the Secretary of the Treasury may from time to time prescribe" (emphasis supplied).

Pursuant to this authorization, the Secretary issued Regulations on United States Savings Bonds. The first were those that appeared in Department Circular 571, dated December 16, 1936, 1 Fed. Reg. 2165. They have been revised from time to time. The eighth revision was in effect in 1961 when Mrs. Baum delivered the bonds in question to her respective granddaughters.

Section 315.5 of the Regulations, 31 CFR (1959 revision), provided that the "form of registration used must express the actual ownership of and interest in the bond and . . . will be considered as conclusive of such ownership and interest." Section 315.7 authorized registration in the names of two persons in the alternative

---

[2] This is § 22 (a) of the Second Liberty Bond Act, 40 Stat. 288, as added by § 6 of the Act of Feb. 4, 1935, 49 Stat. 21, and as amended by § 3 of the Public Debt Act of 1941, 55 Stat. 7.

as co-owners, and stated, "No other form of registration establishing co-ownership is authorized."

Section 315.15 imposed a limitation on transfer: "Savings Bonds are not transferable . . . except as specifically provided in the regulations . . . ." Section 315.20 (a) stated, "No judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond . . . ." Section 315.60 provided that a savings bond registered in co-ownership form will be paid, during the lives of both co-owners, "to either upon his separate request," in which case the other "shall cease to have any interest in the bond," or will be reissued, during the lives of both co-owners, upon the request of both, in the "name of either, alone or with a new co-owner or beneficiary," if, in the case of reissuance, the co-owners possessed one of a number of specifically enumerated relationships, including "grandparent and grandchild."

Section 351.61 related to payment or reissue after the death of a co-owner. The survivor is recognized "as the sole and absolute owner," and payment or reissue is "made as though the bond were registered in the name of the survivor alone," except that the request must be supported by proof of death of the other co-owner.

The regulations thus made the jointly issued bond nontransferable in itself and permitted a change in ownership, so long as both co-owners were alive, only through reissuance at the request of both co-owners.

### III

Mary E. Baum, the decedent here, whatever the reason may have been, chose not to have the bonds in question reissued in the names of her granddaughters, as she might have done pursuant to the applicable regulations. Instead, she merely delivered the bonds to the granddaughters with donative intent. Our issue is

whether that delivery, accompanied by that donative intent, was sufficient to remove the bonds from the decedent's gross estate. We conclude that it was not.

We have no reason to rule against the integrity and effect of the regulations. The issuance of the bonds by the Secretary, subject to such "restrictions on their transfer" as the Secretary may prescribe, was clearly authorized by the Congress in 31 U. S. C. § 757c (a). And the restrictions on their transfer were just as clearly spelled out by the Secretary in his regulations. No claim is made—and none could be made—that the regulations are unclear or are inapplicable to Mrs. Baum's purported transfers. Nor can we view the regulations as an undue or improper restriction of the transfer rights the decedent would otherwise have. The bonds were issued subject to transfer restrictions, and those restrictions, in the eyes of the law at least, were known to her. She could have had the bonds issued originally in the sole names of the grandchildren, but she chose the co-ownership form and, as her later attempts at transfer reveal, she chose to retain possession of them. Having done so, she was obligated to play the game according to the rules.

The decisions below also overlook the facts that until her death, the decedent retained the right to redeem each of the bonds in question, the right to succeed to the proceeds if she survived the putative donee, and the right to join or to veto any attempt to have the bonds reissued. 31 CFR §§ 315.60 and 315.61 (1959 revision).[3]

We note, in passing, that any other rule could well lead to chaotic conditions with respect to savings bonds

---

[3] The District Court, and the Court of Appeals in adopting the District Court's opinion, stated that either co-owner could have had the bonds "reissued without even the signature of the other." 312 F. Supp. 1263, 1268. This ignores the positive requirement of § 315.60 that reissue is to be "upon the request of both."

and to great potential for abuse. Millions of these bonds are outstanding.[4] The requirements of Government for uniformity and for proper recordkeeping alone demand and justify something less than absolute freedom of transfer. Considerations of safety and an aspect of permanency of investment are additional factors that demand the same result.

Our conclusion, we feel, is required by the holding in *Free* v. *Bland,* 369 U. S. 663 (1962). There the Court held that, absent fraud, the regulations creating a right of survivorship in United States Savings Bonds issued in co-ownership form overrode or pre-empted any inconsistent state property law. We stressed there, as we do here, that a contrary result would fail "to give effect to a term or condition under which a federal bond is issued." *Id.,* at 669. We see nothing in the earlier case of *Bank of America Trust & Savings Assn.* v. *Parnell,* 352 U. S. 29 (1956), that implies anything to the contrary. That case was also distinguished in *Free* v. *Bland,* 369 U. S., at 669.

*Reversed.*

---

[4] The Government in its petition, p. 8, asserts that approximately 500 million Series E Bonds are outstanding, that these are worth over 50 billion dollars, and that 75% of them are registered in co-ownership-form.