**Willie Beatrice T. COOPER and
Bobby Joe Tullos**

v.

**UNITED STATES of America.**

No. 19194.

United States District Court,
W. D. Louisiana,
Monroe Division.

Aug. 27, 1974.

---

William B. Ragland, Jr., Voelker, Ragland & Brackin, Lake Providence, La., for plaintiffs.

Donald E. Walter, U. S. Atty., and Robert H. Shemwell, Asst. U. S. Atty., Shreveport, La., Fleming T. deGraffenried, and William W. Guild, Attys., Tax Div., Dept. of Justice, Dallas, Tex., for the Government.

DAWKINS, Senior District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was submitted to the Court in Monroe, Louisiana, upon defendant's motion for summary judgment. After considering the pleadings, interrogatories, and answers thereto, and arguments of counsel, the Court hereby grants defendant's motion for summary judgment, making and entered its findings of fact and conclusions of law:

### Findings of Fact

1. This is a suit brought by plaintiffs against the United States for the refund of federal estate tax in the amount of $1,243.55, plus interest.

2. The question presented for determination is whether, for federal estate tax purposes, the estate is entitled to a deduction of one-half the value of certain United States Savings Bonds where, under federal law, the decedent was the absolute owner thereof, although, if State law governed, the bonds would be subject to community property provisions and the deduction would be allowable.

3. The facts, as established by the answers to defendant's interrogatories, and by the pleadings, show that in the mid-1930's, William Thomas Tullos and his wife, Ollie Ethel Berry Tullos (hereinafter referred to as decedent), moved to East Carroll Parish, Louisiana, from a rural community near Hamburg, Arkansas. They had, at that time, little or no property. All property acquired by them after entering Louisiana became a part of their community property under State law.

4. Both plaintiffs are children of William Thomas Tullos and decedent. During the marriage of William Thomas Tullos and decedent, they used community property funds to purchase 13 United States Series E Savings Bonds. Six of the savings bonds were registered in the name of William T. Tullos or Mrs. Ethel Berry Tullos (decedent), and seven of the United States Savings Bonds were registered in the name of W. T. Tullos or Ollie Ethel Berry Tullos (decedent).

5. July 2, 1954, William Thomas Tullos died. For federal estate tax purposes, the Estate of William Thomas Tullos reported the 13 United States Savings Bonds and included one-half of the bonds in his taxable estate. This federal estate tax return was accepted as filed.

6. September 14, 1954, the Sixth Judicial District Court for the Parish of East Car-

roll, State of Louisiana, adjudicated the ownership of the United States Savings Bonds as community property of W. T. Tullos and decedent under Louisiana law. That judgment further provided plaintiffs were the owners (under State law) of an undivided one-half interest each in W. T. Tullos's one-half community property interest in the United States Savings Bonds, subject to a usufruct in favor of their mother, the decedent.

7. At some time prior to August 2, 1957, decedent remarried. Her new husband was B. W. Carrington. By the will of W. T. Tullos, decedent's remarriage terminated her usufruct. By notarial act dated August 2, 1957, executed by decedent and by both plaintiffs, decedent reacquired, under Louisiana law, a usufruct over the 13 United States Savings Bonds. By the terms of that notarial act, decedent acquired a new usufruct over W. T. Tullos's one-half of the community property, specifically including the United States Savings Bonds.

8. The 13 United States Savings Bonds were cashed by decedent prior to 1960, the proceeds being used by her for her own personal living expenses.

9. Decedent's date of death was February 21, 1969. Her children, plaintiffs, are co-executors of her will. They instituted this action against the United States to recover estate taxes assessed against and collected from decedent's estate. The assessment resulted from disallowance by the Internal Revenue Service of a deduction on decedent's federal estate tax return for plaintiff's alleged ownership interest under State law in the United States Savings Bonds.

10. The disallowed deduction was for the alleged amount owed by decedent to plaintiffs for plaintiffs' claimed ownership interest in the United States Series E. Bonds, which ownership would be valid under Louisiana law, but which was invalid under federal law.

### Conclusions of Law

1. Jurisdiction is based upon 28 U.S.C. Section 1346.

2. The federal estate tax is levied upon the taxable estate of the decedent upon the date of his death. Various items are allowable as deductions from the decedent's gross estate in arriving at his taxable estate.

3. In *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), the Supreme Court held that, where United States Savings Bonds are registered in the names of a husband and wife with right of survivorship, the survivor is the absolute owner of the bonds even in community property States. The surviving co-owner, being the absolute owner under federal law, is not liable to surviving issue for alleged ownership interests under State law.

4. The rationale established by the Supreme Court in *Free v. Bland, supra,* is that the Treasury Regulations, providing that the survivor of United States Savings Bonds registered in joint names with right of survivorship is the absolute owner of the bonds, is a federal law which must prevail where it conflicts with State law. See also *Yiatchos v. Yiatchos,* 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), and *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950).

5. When decedent's husband, William Tullos predeceased her on July 2, 1954, decedent became the absolute owner of the bonds and was not liable to her children for any claim of ownership they might have under State law with respect to the United States Savings Bonds. Consequently, for federal estate tax purposes the estate is not entitled to a deduction for alleged ownership interest by the decedent's children in the United States Savings Bonds in question.

6. Plaintiffs argue that the United States Savings Bonds should not have been taxed in the taxable estate of Tullos (even to the extent of his one-half interest, as they were) if they became the absolute property of decedent, the surviving co-owner. That suggestion is mistaken. Where United States Savings Bonds are held in co-ownership form and one of the two co-owners dies, the bonds are taxed in the

taxable estate of the decedent regardless of their becoming the absolute property of the survivor. Under the Internal Revenue Code of 1954, Section 2040 (26 U.S.C.), a decedent's taxable estate includes the value at the date of death of all jointly held property, except such part of the entire value as was furnished by the other joint owner. The Treasury Regulations on Estate Tax (1954 Code), Section 20.2040–1(b) (26 C.F.R.), provide that jointly held property includes property wherein the survivor takes the entire interest in the property by right of survivorship. Thus, under the statute and applicable regulations, the taxable estate of Tullos properly included his one-half interest in the United States Savings Bonds, regardless of the fact that his surviving co-owner, decedent, became the absolute owner of the bonds at his death. *United States v. Chandler,* 410 U.S. 257, 93 S.Ct. 880, 35 L.Ed.2d 247 (1973).

7. September 14, 1954, the Sixth Judicial District Court for the Parish of East Carroll, State of Louisiana, adjudicated the bonds in question as community property of W. T. Tullos and the decedent under Louisi-ana law, thus recognizing plaintiffs' claimed ownership interest in the bonds under State law. With respect to whether, for federal estate tax purposes, the Government is bound by such a determination by a state trial court, in *Commissioner of Internal Revenue v. Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), the Supreme Court held that the Government is not bound or estopped by such a decision. Moreover, as noted, *Free v. Bland, supra,* held the federal law concerning decedent's absolute ownership of the bonds to be controlling.

8. Plaintiffs further contend that if decedent became the absolute owner of the bonds when her husband, W. T. Tullos, died, they thereafter acquired an ownership interest in the bonds. Decedent did not surrender the bonds and reregister them in the names of plaintiffs. The bonds remained registered in decedent's name until she sold them. The Treasury Regulations on United States Savings Bonds (Treasury Department Circular No. 530, Ninth Rev.), Part 315 (31 C.F.R.), Sections 315.5, 315.15, and 315.62,* require reissuance to reflect any

* Treasury Regulations on United States Savings Bonds (Treasury Department Circular No. 530, Ninth Rev.), Part 315 (31 C.F.R.):

§ 315.5 *General.*

Savings bonds are issued only in registered form. The registration used on issue or reissue must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in Subpart E and § 315.48, will be considered as conclusive of such ownership and interest. No designation of an attorney, agent, or other representative to request or receive payment on behalf of the owner or a coowner, nor any restriction on the right of the owner or a coowner to receive payment of the bond or interest, except as provided in these regulations, may be made in the registration or otherwise. Registration requested in applications for purchase or requests for reissue should be clear, accurate, and complete, conform with one of the forms set forth in this subpart, and include the appropriate taxpayer identifying number. The registration of all bonds owned by the same person, organization, or fiduciary should be uniform with respect to the name of the owner and, in the case of a fiduciary, the description of the fiduciary capacity. The owner, coowner, or beneficiary should be designated by the name by which he is ordinarily known or the one under which he does business, including preferably at least one full given name. The name may be preceded by any applicable title, such as "Dr." or "Rev.," or followed by "M. D.," "D. D.," or other similar designation. "Sr." or "Jr." or a similar suffix should be included, when ordinarily used or when necessary to distinguish the owner from a member of his family. The name of a woman must be preceded by "Miss" or "Mrs.," unless some other applicable title or designation is used. A married woman's own given name, not that of her husband, must be used, for example, "Mrs. Mary A. Jones," not "Mrs. Frank B. Jones." The post office address should include, where appropriate, the number and street, route, or any other local feature, and the ZIP Code.

§ 315.15 *Limitation on transfer or pledge.*

Savings bonds are not transferable and are payable only to the owners named thereon, except as specifically provided in these regulations, and then only in the manner and to the extent so provided. A savings bond may not be hypothecated, pledged as collateral, or used as security for the performance of an obligation, except as provided in § 315.16.

§ 315.62 *After the death of one or both coowners.*

If either coowner dies without the bond having been presented and surrendered for pay-

change in ownership. Even delivery of the bonds with donative intent is not sufficient under federal law. *United States v. Chandler, supra.*

9. Under federal law, decedent was the absolute owner of the bonds, and that ownership interest cannot be reduced, or anywise affected, by State law which would require the absolute owner to make payments to persons who, by State law, own interests in the bonds. As the Supreme Court said in *Free v. Bland, supra,* 369 U.S. at p. 669, 82 S.Ct. at 1093:

> The success of the management of the national debt depends to a significant measure upon the success of the sales of the savings bonds. The Treasury is authorized to make the bonds attractive to savers and investors. One of the inducements selected by the Treasury is the survivorship provision, a convenient method of avoiding complicated probate proceedings. Notwithstanding this provision, the State awarded full title to the co-owner but required him to account for half of the value of the bonds to the decedent's estate. Viewed realistically, the State has rendered the award of title meaningless. Making the bonds security for the payment confirms the accuracy of this view. *If the State can frustrate the parties' attempt to use the bonds' survivorship provision through the simple expedient of requiring the survivor to reimburse the estate of the deceased co-owner as a matter of law, the State has interfered directly with a legitimate exercise of the power of the Federal Government to borrow money.* [Emphasis added.]

10. Further, in order for an estate to obtain a deduction for federal estate tax purposes, the alleged debt must be enforceable (Section 2053(a) of the Internal Revenue Code of 1954). And the claim against the estate must be supported by "adequate and full consideration in money for money's worth" (Section 2053(c) of the Internal Revenue Code of 1954). Here, plaintiffs supplied no consideration for any interest in the bonds, and, under *Free v. Bland, supra,* the children had no interest in the bonds.

11. In summary, the United States Savings Bonds, upon the death of Tullos, became the property of decedent absolutely, and nothing that happened thereafter changed that fact, which could have been accomplished only by complying with Treasury Regulations which set forth the only means by which ownership in the United States Savings Bonds can be changed. Instead of changing ownership in the bonds, decedent cashed them and used the proceeds for her own personal uses. Consequently, under federal law, decedent owed plaintiffs nothing with respect to the bonds upon her death. The Internal Revenue Service, therefore, was correct in disallowing the deduction for federal estate tax purposes for alleged ownership interest of the plaintiffs in the bonds.

---

ment or authorized reissue, the survivor will be recognized as the sole and absolute owner. Thereafter, payment or reissue will be made as though the bond were registered in the name of the survivor alone (see Subpart L of this part), except that a request for reissue by him must be supported by proof of death of the other coowner, and except further that after the death of the survivor proof of death of both coowners and of the order in which they died will be required. The presentation and surrender of a bond by one coowner for payment establishes his right to receive the proceeds of the bond, and if he should die before the transaction is completed, payment will be made to the legal representative of, or persons entitled to, his estate in accordance with the provisions of Subpart O of this part. If either coowner dies after the bond has been presented and surrendered for authorized reissue (see § 315.-47) the bond will be regarded as though reissued during his lifetime.