Evan P. ADCOCK, Individual Executor of the Estate of Mattie L. Pritchett, Appellant,

v.

ALAMO NATIONAL BANK, Individual Executor of Ellen C. Kerns, Appellee.

No. 15739.

Court of Civil Appeals of Texas, San Antonio.

March 2, 1977.

Rehearing Denied April 13, 1977.

Biery, Biery, Davis & Myers, Bobby D. Myers, San Antonio, for appellant.

Bayne & Snell, Barry Snell, San Antonio, for appellee.

BARROW, Chief Justice.

Appellant brought this suit against Alamo National Bank, Guardian of the Estate of Ellen C. Kerns, a Person of Unsound Mind, to recover the sum of $20,006.84 for conversion of certain United States savings bonds. Mrs. Kerns died during the pendency of the suit and, after probate of her will, Alamo National Bank, as Independent Executor of the Estate, was substituted as party defendant. A take-nothing judgment was entered after a non-jury trial.

Series H bonds in the face amount of $17,500.00 and Series G bonds in the face amount of $1,500.00, in the name of "Miss Mattie L. Pritchett or Mrs. Ellen Kerns," were found by the guardian in the lockbox of Mrs. Kerns after the death of Miss Pritchett. Appellant concedes that under existing Treasury Regulations both payees are recognized as co-owners of the bonds, and, upon the death of one payee, the survivor is recognized as the sole and absolute owner. See 31 C.F.R. Sec. 315.60–315.62. Appellant sought to avoid this rule by couching her suit as one for conversion or breach of trust because of the alleged failure of Mrs. Kerns to return the bonds to Miss Pritchett.

The circumstances surrounding the two women and the application of the Dead

**14**

Man's Statute [1] limit the evidence available to appellant. The two women were close friends and Miss Pritchett lived most of her adult life in an apartment owned by Mrs. Kerns next door to her home. Miss Pritchett died on June 2, 1974, at the age of 89. Mrs. Kerns died on February 1, 1976, at the age of 95. Both women were very self sufficient until their later years and neither had anyone looking after her business affairs. The closest surviving kin were a nephew of each and a niece of Mrs. Kerns.

The trial court found: savings bonds in the face amount of $19,000.00 were in the name of "Miss Mattie L. Pritchett or Mrs. Ellen Kerns"; Miss Pritchett died on June 2, 1974, and Mrs. Kerns on February 1, 1976; Miss Pritchett delivered the bonds to Mrs. Kerns for safekeeping; that at various times between 1971 and 1974, Miss Pritchett made demand upon Mrs. Kerns for the return of her stocks and bonds; and, that Mrs. Kerns did not deliver the bonds to Miss Pritchett. The trial court refused to find, as requested by appellant, that: the bonds were purchased by Miss Pritchett with her monies; Mrs. Kerns held the bonds as Trustee for the use and benefit of Miss Pritchett; and, Mrs. Kerns refused to re-deliver the bonds after being entrusted with them for safekeeping. The trial court concluded from its findings that prior to the death of Miss Pritchett, both women were co-owners of the bonds and that upon her death, the bonds became the sole property of Mrs. Kerns. The court also concluded that appellant was not entitled to recover damages for conversion or breach of trust.

Appellant asserts ten points of error. The first three points urge that he is entitled to judgment for conversion under the findings of fact by the trial court and that the judgment as entered is manifestly unjust. Two points complain because the court did not find that Mrs. Kerns refused to return the bonds to Miss Pritchett. Appellant also urges that the court erred in failing to find that Miss Pritchett purchased the bonds. He complains by three

points of the trial court's conclusions of law that both women were co-owners of the bonds prior to Miss Pritchett's death and that Mrs. Kerns, as survivor, was the sole and absolute owner. These points are all inter-related and will be considered under one basic proposition.

■ The Supreme Court of the United States, in *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), held that, irrespective of the source of funds used to purchase savings bonds issued in co-ownership form, the survivor will be recognized as the sole and absolute owner of the bonds and that, absent fraud, no judicial determination will be recognized which would defeat or impair the right of survivorship conferred by the Treasury Regulations. In that case, bonds were purchased with community funds and placed in the name of Mr. or Mrs. Free. After the death of Mrs. Free, her son sued Mr. Free for one-half of the bonds or for reimbursement for the loss of her community interest in the bonds which were converted into his separate estate by operation of the Treasury Regulations. The Supreme Court of Texas granted this relief,[2] but the Supreme Court of the United States reversed. *See also: Yiatchos v. Yiatchos,* 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964); *United States v. Chandler,* 410 U.S. 257, 93 S.Ct. 880, 35 L.Ed.2d 247 (1973); *Wood v. Johnston,* 404 S.W.2d 678 (Tex.Civ.App.—Eastland 1966, writ ref'd n. r. e.). Thus, the basic question before us is whether appellant has established that Mrs. Kerns committed fraud or a breach of trust tantamount to fraud prior to the death of Miss Pritchett.

■ There was no direct evidence of the circumstances regarding the purchase of the bonds. Order blanks were found in Miss Pritchett's papers and they show that she purchased $7,000.00 in Series H bonds on March 23, 1953, and $9,000.00 in Series H bonds on March 16, 1956. Another order blank was introduced which showed the purchase of $1,500.00 in Series H bonds on December 31, 1957, but the signature of the

---

1. Art. 3716, Tex.Rev.Civ.Stat.Ann. (1926).

2. *Bland v. Free,* 162 Tex. 72, 344 S.W.2d 435 (1961).

purchaser is not legible. The exact source of the funds used for these purchases was not shown although Miss Pritchett had received just over $9,000.00 on March 15, 1956, in redemption of some other bonds and this sum was probably used for the March 16, 1956 purchase. There was no evidence as to why the bonds were made payable to both women. Only Miss Pritchett's address was shown on the bonds and she received and kept all interest payments. The bonds were kept in a safe in Mrs. Kerns' home until removed to her lockbox at some undisclosed time.

The trial court refused to find that the bonds were purchased by Miss Pritchett with her monies although it did find that she had delivered the bonds to Mrs. Kerns for safekeeping. In 1970 or 1971 Miss Pritchett broke her hip. After release from a nursing home, she temporarily moved in with her nephew and his wife. She died before she was able to return to the apartment.

Mrs. Kerns entered a nursing home in 1968, and thereafter the two women had little direct contact. A niece of Mrs. Kerns testified that Miss Pritchett repeatedly asked her to obtain her "stocks and bonds" from Mrs. Kerns. The times of these requests were not fixed but it apparently was in early 1974 because in March 1974, Mrs. Kerns' nephew from Arkansas came to San Antonio and arranged to deliver to Miss Pritchett her papers which were then located in the safe of Mrs. Kerns. At that time, he delivered certain stocks and papers to Miss Pritchett, but did not see any bonds. Thereafter Miss Pritchett made inquiry of the nephew and niece as to the bonds. The response of Mrs. Kerns was conflicting and, undoubtedly, reflect her senility. The nephew testified that upon inquiry of Mrs. Kerns, she denied there were any bonds. On the other hand, the niece testified that Mrs. Kerns told her that she was keeping the bonds for Miss Pritchett until the latter needed them in her old age. In any event, the evidence is very inconclusive because of the senility of both women and the inability of their heirs to really understand what was involved since no bonds were found until after the guardianship was opened. Miss Pritchett died on June 2, 1974, and on December 23, 1974, Mrs. Kerns was declared to be a person of unsound mind.

We cannot say from this sparse record that the trial court abused its discretion in concluding that appellant is not entitled to recover damages for a conversion or for breach of trust. We recognize the difficulties confronted by appellant in trying to make out his case. Also, the court's judgment may frustrate the wishes of these two life-time friends. Nevertheless, in the absence of evidence which would establish fraud, the Treasury Regulations must prevail.

There is no evidence whatsoever that Mrs. Kerns was made a co-owner of the bonds through any fraud or as the result of a breach of trust. If we assume that the bonds were bought by Miss Pritchett with her own monies, there is no evidence to rebut the presumption that Mrs. Kerns was made a co-owner either by gift from Miss Pritchett or else through some consideration. The evidence does not conclusively establish that Mrs. Kerns refused to deliver the bonds to Miss Pritchett in response to the latter's specific request. To the contrary, Mrs. Kerns' niece, who gave the only evidence of a request for the bonds by Miss Pritchett, testified that the latter never did get angry over her failure to obtain the bonds. Insofar as Mrs. Kerns was concerned, the evidence is conclusive that she was keeping the bonds for Miss Pritchett, not to cheat her. Finally, there is no evidence that Miss Pritchett intended to cash the bonds even if she had secured them from Mrs. Kerns. Under the Treasury Regulations, the bonds could not be reissued to another payee without the joinder of both co-owners. Thus, Mrs. Kerns would have been the sole owner upon Miss Pritchett's death irrespective of who had possession.

We have considered each of appellant's ten points and reversible error is not shown by any of them. The trial court did not err in entering the take-nothing judgment.

The judgment is affirmed.