**Richard W. BOYD, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 79–687–A.

United States District Court, W. D. Pennsylvania.

July 11, 1980.

See also, D.C., 482 F.Supp. 1126.

Estelle F. Comay, Pittsburgh, Pa., for plaintiff.

Robert J. Cindrich, U. S. Atty., Pittsburgh, Pa., James P. Klapps, Asst. Director, Torts Branch, Civil Division and Raymond A. Nowak, Atty., Torts Branch, Dept. of Justice, Washington D. C., for defendant.

## OPINION

WEBER, Chief Judge.

In this action to recover the value or replacement of a United States Treasury Note, the parties have stipulated to the following facts, and have filed cross-motions for Summary Judgment.

On December 8, 1977, a $5,000 bearer 7⅞% Treasury Note, Series A–1986, Serial No. 10890, issued May 17, 1976, and due May 15, 1986, which had attached thereto eighteen (18) coupons, each valued at maturity at approximately $196.88 was stolen from plaintiff Boyd during a burglary of his Bethel Park, Pennsylvania home. The Note was originally purchased in May 1976 by the Dauphin Trust Co. in Harrisburg, Pennsylvania, and was delivered to Boyd by Dauphin Trust as part of his inheritance in June 1977.

Boyd had been away at college at the time of the burglary and learned of the theft on his return home on December 23, 1977 for vacation. On December 28, 1977, Boyd telephoned the Assistant Vice President and Trust Officer of the Dauphin Trust Co. regarding the theft and requested information and instructions regarding replacement of the Note. Boyd was advised to contact his local bank for assistance.

On that same day, Boyd telephoned Michael Malone, Assistant Manager, Union National Bank, Bethel Park, Pa. about the theft and requested information regarding replacement of the Note. Malone telephoned the Pittsburgh Branch of the Federal Reserve Bank of Cleveland, Pittsburgh, Pa. (FRB Pittsburgh) and spoke with Dan Robinson, an Administrative Assistant in the Securities Department who referred Malone to the Correspondence and Claims Branch, Division of Securities Operations, Bureau of Public Debt, Department of Treasury in Washington, D. C. Mr. Malone

telephoned the Correspondence and Claims Branch and spoke with Nancy Faucett, a Claims Analyst, who advised Malone that it would be necessary for written notification of the theft to be sent to that Branch. Mr. Malone so informed Boyd.

In a letter dated Saturday, January 7, 1978, Boyd notified the Correspondence and Claims Branch of the Bureau of Public Debt in writing of the theft of Treasury Note No. 10890 and requested information and instructions regarding its replacement. Boyd's letter was postmarked January 9, 1978 and was received at the Division of Securities Operations on Friday, January 13, 1978. It was received at the Correspondence and Claims Branch on Monday, January 16, 1978.

On Monday, January 16, 1978, Boyd telephoned Ms. Faucett to inquire about the status of his letter of January 7th. He was told that his letter had been received and was being processed.

On January 31, 1978, forms and information were sent to Boyd in response to his January 7th letter. Boyd subsequently submitted a duly completed Form PD 1022–1, "Report/Application for Relief on Account of Loss, Theft, or Destruction of United States Bearer Securities (Individuals)," executed on February 20, 1978. Upon receipt of this form, Treasury Note 10890 was placed on the Federal Reserve Bank Checklist of U. S. Government and Agency Securities Reported as Stolen or Missing, on February 24, 1978.

While all this correspondence was taking place, on Wednesday, January 11, 1978, Treasury Note 10890, with 17 coupons attached, was presented for sale at the Bellevue Branch of the Pittsburgh National Bank, by a customer of the bank, James Miller. John Rihs, Manager of the Branch, contacted Charles Sullivan, Safety and Security Officer, at Pittsburgh National's downtown office. Sullivan in turn, telephoned the Securities Department of the FRB Pittsburgh to inquire whether the security was listed on the Federal Reserve Bank Checklist. Mr. Sullivan was advised by the clerk in the Securities Department that the Note was not listed on the checklist.

The Note was then sold on wire transfer to a purchaser in New York. In connection with this sale, Pittsburgh National forwarded the Note to FRB Pittsburgh on January 18, 1978, and FRB Pittsburgh, in turn, forwarded the Note to the Bureau of Public Debt on January 25, 1978.

By letter dated March 8, 1978, the Bureau of Public Debt furnished to Boyd Form PD 4087 (Bond of Indemnity) with instructions and Circular 570 (Surety Companies Acceptable on Federal Bonds), relative to his obtaining replacement of the Note. This form has never been returned by Boyd.

On March 24, 1978, Boyd and Tom Rice, a U. S. Secret Service Agent assisting him to locate the Note, visited the Pittsburgh Branch of the Federal Reserve Bank, and spoke with Dan Robinson, who informed them that the Note had not as yet been reported by the Bureau of Public Debt as having been received.

On or about May 17, 1978, the Correspondence and Claims Branch of the Bureau of Public Debt was advised by the Records Branch that Treasury Note 10890 had been received and honored. Accordingly, by letter dated May 23, 1978, Boyd was informed that because the stolen Note had been received and honored, his February 20, 1978 Report/Application could not be further considered.

This lawsuit was initiated in May of 1979 for statutorily provided relief on account of the loss through theft of the Treasury Note with coupons attached and for damages caused by the negligence of the United States through its employees which resulted in the loss. The plaintiff brought this action under the Tucker Act, 28 U.S.C. § 1346(a)(2), pursuant to 31 U.S.C. § 738a, and under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* The defendant's Motion to Dismiss for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted was denied by this court, and the parties have now filed Cross Motions for Summary Judgment.

The type of security involved in this lawsuit is a coupon form Treasury Note. A coupon note is one for which the ownership of the security is not recorded on the books of the Treasury Department. Both the note and attached coupons are payable to bearer which means that title to the security passes by delivery alone, without endorsement and without notice. 31 C.F.R. § 306.2(b). Bearer securities are easily negotiable and for many purchasers that is one of their salient characteristics. The Government's policy and practices are designed to promote the ready negotiability of these notes.

Treasury notes represent federal contracts, and Treasury Regulations are considered an implied part of the contract between the United States and the purchaser of its bonds. *United States v. Chandler*, 410 U.S. 257, 259–62, 93 S.Ct. 880, 881–882, 35 L.Ed.2d 247 (1973); *Bodek v. Department of Treasury*, 532 F.2d 277, 279 n. 7 (2nd Cir. 1976); *Wolak v. United States*, 366 F.Supp. 1106, 1112 (D.Conn.1973). The regulations which are part of the terms and conditions of the contract, and which are relevant here, are found at 31 C.F.R. § 306.1 *et seq.*

Plaintiff's claim under the Federal Tort Claims Act is based on the theory that the government was negligent in failing to halt the transaction between Pittsburgh National Bank and James Miller, which resulted in the sale of the stolen security after plaintiff had given notice to the government of the theft of the Note. But under the terms of the contract, the government owed no duty to plaintiff to effectuate a "stop payment" order after notice of the theft.

Under Section 306.106 of the regulations which govern United States securities, neither the Department nor any of its agents will accept notice of any claim for the purpose of suspending transactions in bearer securities which are not overdue. Footnote 11 to this regulation explains the government's reasons for not suspending transactions:

It has been the longstanding policy of the Department to assume no responsibility for the protection of bearer securities not in the possession of persons claiming rights therein and to give no effect to any notice of such claims. This policy was formalized on April 27, 1867, when the Secretary of the Treasury issued the following statement:

"In consequence of the increasing trouble, wholly without practical benefit, arising from notices which are constantly received at the Department respecting the loss of coupon bonds, which are payable to bearer, and of Treasury notes issued and remaining in blank at the time of loss, it has become necessary to give this public notice, that the Government cannot protect and will not undertake to protect owners of such bonds and notes against the consequences of their own fault or misfortune.

Hereafter all bonds, notes and coupons, payable to bearer, and Treasury notes issued and remaining in blank, will be paid to the party presenting them in pursuance of the regulations of the Department in the course of regular business; and no attention will be paid to caveats which may be filed for the purpose of preventing such payment."

The Plaintiff challenges the applicability of this regulation by pointing out that this footnote encompasses a statement made in 1867. But age alone has no bearing on whether it continues to be valid, and the fact that the Code of Federal Regulations continues to contain the statement indicates that this continues to be the position of the government.

Plaintiff also claims that the principle enunciated in Footnote 11 is contradicted by the Treasury's own regulations promulgated pursuant to 31 U.S.C. § 738a, which statutorily provides relief to owners of securities that have been stolen or destroyed prior to maturity. 31 C.F.R. § 306.110. The fact that relief is provided for specifically defined circumstances does not contradict Footnote 11 which only indicates that owners of bearer securities will not be pro-

tected by the suspension of transactions after notice, or stop payment orders. The relief provided by 31 C.F.R. § 306.110 only involves replacement of the note and requires that notice be promptly given and that a bond of indemnity be posted if the security is not proven to be destroyed. If the stolen bearer security subsequently is honored by the government, as is required, the owner forfeits the bond. This form of relief maintains the negotiable characteristics of bearer securities. The notice which is required is a condition to this relief, but does not in any way serve as a stop payment order.

■ The regulations and the terms of the contract impose no duty on the government to suspend transactions in bearer securities after notice of theft. The plaintiff also bases his negligence claim on the theory that the government undertook such a duty when it instituted the Checklist of U. S. Government and Agency Securities Reported as Stolen or Missing. The plaintiff submitted affidavits of Pittsburgh National Bank officers which aver that had the Pittsburgh Branch of the Federal Reserve Bank informed them, upon their inquiry, that Treasury Note 10890 was listed as stolen, they would not have completed the sale. Therefore, plaintiff argues that the government was negligent in failing to checklist this stolen security in sufficient time to prevent the transaction.

The government submitted a *Report on Problem of Government Securities Theft*, July 17, 1970, prepared by the Subcommittee on Fiscal Agency Operations (Exhibit B to Defendant's Motion) upon which the checklist system was initiated. This report makes it clear that the government was well aware of the problem with dealing with these stolen securities because of their ease in negotiation and wanted to take steps to curtail these thefts. The checklist system was not intended to curtail thefts by impeding the negotiability of bearer securities through stop payment orders, however. (Page iii of Summary and Recommendations, Pages 7, 26, 30 of the Report). The purpose of the checklist was simply to maintain current information which law enforcement agencies will find useful and to which banks can refer when a security is presented, and if it is stolen, to call the local authorities to investigate to make arrests. The list is for the purposes of surveillance and law enforcement only. (Pages i and iii of Summary, and Pages 21–26 of Report). The government did not assume the duty to stop payment on timely notice by the checklist system. The fact that PNB officials aver that they would have suspended the transaction had they been notified that the security was stolen is not evidence of an assumed duty without a showing that the government was aware that banks generally treated the checklist information in this manner.

■ The plaintiff's claim of negligence actionable under FTCA fails due to the lack of an express or implied duty to stop the transaction upon notice of the theft. Even if a duty were present in this case, the plaintiff's case would fail for lack of proximate cause because the government's inaction could not have caused the loss where they received written notice on January 13, and the note had been already sold on January 11.

The plaintiff's Tucker Act claim for breach of the Note contract and an entitlement to a replacement note under 31 U.S.C. § 738 also fails.

There is no breach of the express or implied contract for the reasons already discussed. The government did not obligate itself to give effect to notice for the purpose of suspending transactions in bearer securities.

■ There is no entitlement to a replacement note pursuant to 31 U.S.C. § 738a and 31 C.F.R. § 305.110 because those provisions require that a bond of indemnity be posted as a prerequisite to replacement, unless the applicant can show that the bearer note has been destroyed. The stipulated facts show that the plaintiff was sent the materials necessary (Form PD 4087 with Instructions and Circular 570, Surety Companies Acceptable on Federal Bonds) on March 8, 1978.

The plaintiff did not post such a bond prior to May 23, 1978 when he was notified that his claim could no longer be considered, nor has he done so since. The note has not been destroyed so as to excuse the condition of the bond of indemnity. There can be no entitlement to a replacement note where the plaintiff has failed to meet the requisite conditions to such relief.

In accordance with the foregoing Opinion, the Defendant's Motion for Summary Judgment will be granted and the Plaintiff's Cross-Motion for Summary Judgment will be denied.

Findings of fact and conclusions of law are included in the body of the foregoing Opinion under Rule 52(a) of the Federal Rules of Civil Procedure.