Neglia Estate.

Argued March 20, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused May 24, 1961.

*Samuel R. DiFrancesco, Sr.,* with him *DiFrancesco & DiFrancesco,* for appellant.

*Samuel G. Shahade,* with him *Shahade, Horty & Shahade,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 2, 1961:

A petition for a declaratory judgment was filed in the Orphans' Court of Cambria County by the personal representative of decedent's estate to determine the ownership of thirteen $1,000 United States savings bonds, Series "E", as between the decedent's husband and her brother, the person designated on these bonds as co-owner with decedent. The court below decided that, by reason of the federal regulations,[1] ownership of the bonds was in the brother and not in the husband; from that ruling, this appeal was taken.

The findings of fact of the court below state the factual background:

"1. Mary M. Neglia died on February 19, 1958, a resident of Johnstown. She left to survive her a husband, Bartolo W. Neglia, also known as Bartolomeo Neglia, whom she married in 1951, and a brother, George Sumandra. Prior to her marriage her name was Mary Sumandra Ferner or Mary Ferner.

"2. Between 1946 and 1952 the decedent purchased 13 United States Savings Bonds, Series E. All except the last were purchased before her marriage. Eight of the bonds were issued in the name of Mrs. Mary Ferner or George Sumandra. Four were issued in the name of Mrs. Mary Sumandra Ferner POD (payable on death) George Sumandra. The last bond was issued in the name of Mrs. Mary Neglia POD George Sumandra.

"3. During October, 1957, the decedent, intending to make a gift to her husband of these bonds, endorsed them and delivered possession of them to her husband. She was suffering from multiple sclerosis at the time and was seriously ill, though her mental condition was

---

[1] 31 C.F.R. §§315.5, 315.7, 315.48, 315.49, 315.60, 315.61, 315.15, 315.20.

good. She said to a witness present with her and her husband, 'I want to give these to Bart to make it easier for him.' In delivering the bonds to her husband, she said, 'I have the money; I want you to spend it on me and do what you please with it.'

"4. The decedent did not appear before an officer authorized to certify requests for payment, nor did she execute Treasury Department Form PD 1787, the request to reissue the bonds, nor did she execute any other documents required by the Treasury Department Regulations for transferring the bonds.

"5. After the death of Mary M. Neglia, George Sumandra executed in blank Form PD 1787 and acknowledged it on February 24, 1958, before John J. Mock, Notary Public, in Johnstown. George Sumandra was fully competent when he executed this document. The name of the transferee was not inserted, nor was the document filled in in any other respect. The document was not certified by a person authorized by the U. S. Treasury Regulations to certify it.

"6. In addition to the 13 bonds mentioned above, decedent purchased 3 bonds, 2 in the name of Mrs. Mary Ferner or George Sumandra, and the third in the name of Mrs. Mary Ferner POD George Sumandra. She endorsed these bonds in the same way as the 13 bonds mentioned above and delivered them to her husband at the same time and under the same circumstances. Prior to her death these 3 bonds were cashed at the United States National Bank in Johnstown and the transfer was honored by the Treasury Department.

"7. After the death of Mary M. Neglia, the United States National Bank in Johnstown refused to cash the 13 bonds mentioned above because the Treasury Regulations for transfer and reissuance had not been complied with."

In *Horstman Estate,* 398 Pa. 506, 159 A. 2d 514, we recently considered the ownership of United States sav-

ings bonds, Series "E", stating (pp. 515, 516) : "When the Treasury Department, acting under Congressional fiat, sold these bonds to the decedent it did so under an agreement, upon which decedent, at least presumptively, relied, that in the event the bonds were not surrendered and payment received prior to the decedent's death, the surviving co-owners named in such bonds would be recognized as the *sole and absolute* owners of such bonds. The issuer of the bonds, i.e., the United States Government, covenanted with the decedent through the medium of the Treasury regulations, that, upon the registration of the bonds in co-owner form, such registration would be *conclusive* of the ownership and interest in the bonds. Upon the basis of that contract and agreement between the Government and the decedent the named surviving co-owners of these bonds, as third party beneficiaries, seek to establish their rights to the bonds. The rights of the surviving co-owners in these bonds arise not from a sale, a gift or a devise: they arise exclusively from the contract between decedent and the Government.

"The design of the Treasury regulations is two fold: (1) 'to prevent the Government from being involved in suits between claimants to Government bonds' and (2) 'to protect the interests of the bondholders of these "thrift" securities by preventing transfers': Silverman et al. v. McGinnes, etc., 259 F. 2d 731, 733, 734. Regardless of the purpose or purposes of these regulations it is manifest that they enunciate a rule as to the ownership of this particular species of property in reliance upon which thousands upon thousands of individuals have purchased these bonds; to substitute a nebulous for a certain rule would create a condition which could conceivably interfere with the borrowing power of the Government." (citing cases)

As between the Government and the co-owner designated on the bond, by reason of the contract of pur-

chase, payment *must* be made by the Government to such bond-designated co-owner. That is all that the federal regulations require and we so determined in *Horstman*. Once the Government has made payment of the bond, the impact of the federal regulations terminates; the federal regulations do not purport to control nor do they control the eventual disposition of the *proceeds* of the bond. In *Silverman v. McGinnes*, 259 F. 2d 731, 733, Judge GOODRICH noted this distinction: "The point is that with regard to payment by the issuer, the United States Government, the provisions of the contract including the regulations, govern. But the regulations do not apply to individual rights of persons who under the state law of property have become equitably entitled to the proceeds."

Such a distinction is not without precedent in Pennsylvania. In *Katz v. Lockman*, 356 Pa. 196, 51 A. 2d 619, we held that fraud or inequitable conduct on the part of the surviving co-owner of United States savings bonds will defeat ownership of the proceeds of the bond. In *Estate of Michael Diskin*, 105 Pa. Superior Ct. 519, 161 A. 893, Diskin gave an envelope containing Goverment-designated "non-negotiable-non-transferable" postal savings certificates to a Mrs. Bundshuh, stating, inter alia: " 'I am giving them to you to do what you please' ": Mrs. Bundshuh retained the certificates until after Diskin's death some months later. Stating that: "[t]rue, the certificates were marked 'non-negotiable-non-transferable,' but these restrictions imposed by the government did not affect the title, or right of possession, or validity of the transfer" (p. 521), the Superior Court recognized Mrs. Bundshuh as owner of the proceeds of these certificates and compelled Diskin's administrator to pay such proceeds to Mrs. Bundshuh. In other instances we have recognized that a valid gift of non-negotiable securities may be made by delivery of such securities to the donee even

without an assignment or endorsement in writing: *Connell's Estate,* 282 Pa. 555, 128 A. 503; *Chapple's Estate,* 332 Pa. 168, 2 A. 2d 719; *Dempsey v. First National Bank of Scranton,* 353 Pa. 473, 46 A. 2d 160.[2] The proceeds of United States savings bonds may be the subject matter of a gift.

In *Chapple's,* supra, we said (p. 170) that to support a finding of an inter vivos gift "the evidence must clearly show an intention to make the gift and a delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property but also to invest the donee with complete control of the subject matter of the gift."

Decedent endorsed each bond, orally stated her intent to make a gift of the bonds to her husband and manually delivered them to her husband who retained them in possession until decedent died. All the elements of a valid inter vivos gift required by our decisions have been clearly and completely established.

*Horstman* recognized the existence of certain circumstances under which a trust could be impressed on the proceeds of United States savings bonds. The court below opined that such statement of circumstances in *Horstman* was exclusive; such was not our intent. Fraud on the part of the purchaser or co-owner is not the *only* reason for awarding ownership of the proceeds of these bonds to someone other than the designated co-owner. Where a valid gift by the decedent of the proceeds of such bonds has been proven in the manner required by the decisional law in this Commonwealth, the court may direct the payment of the bond proceeds to someone other than the designated co-owner.

The relief sought herein is declaratory,[3] not coercive and within the framework of this proceeding we take

---

[2] The securities in *Dempsey* were United States savings bonds.

[3] The declaratory relief prayed for in the petition, inter alia, is that the court "order, direct and decree that the United States

no coercive action. If necessary, in a suitable coercive action, appropriate disposition of the proceeds of the bonds can be accomplished. Herein we only declare that, under the instant circumstances, the deceased purchaser of these bonds made a valid inter vivos gift thereof to her husband and the husband (Neglia), not the brother (Sumandra), is the owner of the proceeds of the bonds.

Decree reversed. Each party to pay his own costs.

Treasury Department re-issue the aforesaid bonds in . . . [the husband's] name." *Obviously*, this relief cannot be granted.