**Davis Estate**

*Smith, Aker, Grossman & Hollinger,* for appellant.

*Richard N. Spare,* Assistant Attorney General, for Commonwealth.

TAXIS, P. J., October 19, 1971.—Ethel F. Davis, sister of decedent, has appealed from the inheritance tax appraisement filed in the estate of her brother, Thomas K. Davis, who died September 15, 1968. Brother and sister were both unmarried, and lived together at 1326 Astor Street, Norristown, at decedent's death. The appeal is from the determination that certain property held in the names of Ethel F. Davis and Thomas K. Davis as joint tenants is subject to inheritance tax.

The property involved is of three classes. First is the real estate at 1326 Astor Street, which was transferred on January 17, 1966, by Ethel F. Davis, to herself and the decedent as joint tenants and not as tenants in common. The second group of assets are U. S. Savings Bonds, most Series "E" but two Series "D." The third group of assets are savings accounts; one is in Montgomery County Bank and Trust Co. (now Continental Bank & Trust Co.) with a balance of $5,706.15, another is in Philadelphia Savings Fund Society with a balance of $3,554.46, and the third is in Commonwealth Federal Savings & Loan Association with a balance of $15,091.29

On the inheritance tax return, these items were

listed, but were termed individual assets of Ethel F. Davis which were registered "in joint names with Thomas K. Davis (decedent) for convenience." Certain other jointly-owned property was returned, however, at its full value, for the reason that, despite the joint registration, it was wholly owned by decedent. All of these assets, no matter how returned, have been assessed at one-half their actual value, except for two items, one of which is involved in this appeal. The above-mentioned Philadelphia Savings Fund Society joint account was created by Ethel F. Davis within two years of death, and has been assessed at its full value because of the presumption concerning transfers in contemplation of death.

The testimony adduced in support of the appeal was not elaborate. Ethel F. Davis testified that decedent came to live with her when he retired in 1965, and was in poor health. Ethel F. Davis was the original owner of all of the property involved in this appeal, and all represented, or was purchased by, her own funds. She stated that she made the various transfers to joint ownership in order to provide security for her brother after her death. She said that she did not intend any gift when she set up the joint ownership, but did intend to make a gift to him at the time of her death. She explained that she wanted her brother to have security after her death, have the home, and have something to live for. Miss Davis further testified she and her brother identified the actual owner of their respective jointly-titled property by putting the name of such actual owner first on the title of the account, and the other's name second; the passbooks for two joint accounts concededly owned by Thomas K. Davis were produced in confirmation of this. However, Miss Davis did admit that she understood what the signature cards to the accounts were (which cards are

all signed by both parties and recite, with some variety in language, that the accounts are joint with right of survivorship), that she understood that both joint tenants had the right to withdraw, and that by acting as she did she created an immediate right in her brother which he did not have before. She retained possession of the passbooks to "her" accounts, and her brother did likewise with "his," each in their own strong box. Miss Davis also testified that if her brother had needed money and had come to her for the bank book, she would give him permission to withdraw funds. Miss Davis also kept possession of the U. S. Bonds, and the recorded deed to the house.

Appellant also called Mrs. Jeanne McPhilamy, decedent's sister, as a witness. She recounted that the transfers made by Ethel F. Davis had been suggested, from prior experience, by Mrs. McPhilamy. She said that there was no intent in any of the transfers to make any change in ownership at that time. She also conceded that she thought that this procedure would avoid a will and would allow the property to pass automatically at death. She admitted a lack of knowledge of the legal difficulties involved and, quite frankly, said she did not understand when counsel for the Commonwealth asked her if Ethel F. Davis knew she was creating "immediate rights" in her brother by her transfers.

As a whole, we cannot accept appellant's interpretation of the effect of her acts. Nothing in the testimony suggests that any of the transfers were for the "convenience" of Miss Davis or her brother during her lifetime. Once the transfers were accomplished, the deed, bonds and passbooks went back into Miss Davis' strong box and stayed there. Had Thomas K. Davis needed funds, he would have gone to his sister to get them. As for Miss Davis' convenience, if anything,

she cared for her brother rather than the other way round. In these circumstances, the allegations that these transfers were for "convenience" cannot be accepted. Moreover, it would be logically almost impossible to explain the house and bond transfers on this theory, even if the savings accounts could qualify. See Cabot Estate, 20 Fiduc. Rep. 387, 402 (1969).

Nevertheless, the question of donative intent, or lack of it, is not fully answered by the previous discussion, since even though the convenience motive is discounted, appellant still maintains that she had no intent to make any changes in ownership during her life. Confining our attention for the moment to the savings accounts, the established rule is that a written agreement creating a joint tenancy with right of survivorship, especially where the signature card is signed by both parties, constitutes prima facie proof of an executed gift of a joint interest. The writing itself demonstrates the required donative intent, and when donor executes and delivers it to the depository, this action is sufficient to supply the second element of inter vivos gifts, delivery. Contrary evidence, however, is still admissible. See Furjanick Estate, 375 Pa. 484. This contrary evidence, that there was actually no donative intent or that there was some other aspect to the transaction which invalidates it, must rise to a very high standard, that is, it must be clear, precise and convincing: Furjanick Estate, supra; Amour Estate, 397 Pa. 262. We do not believe that the statements of Ethel F. Davis, in this case, approach this standard; at best, they raise some doubt about what her intent was and suggest that by mutual agreement she and her brother would not assert the present interests each had in the various joint accounts originally belonging to them individually. But the purpose of the creation of the joint accounts by Ethel F.

Davis was plainly not just to allow her brother access to them but to give him an interest which would ripen into full ownership at her death. There are some aspects of a testamentary disposition in such an action, of course, but no more so here than in the creation of a joint interest in any property, anytime, by anyone.

The several cases cited by appellant all relate to situations where there was positive, convincing and impartial testimony that the motive for the creation of the joint tenancy was one of convenience only. In Kivlin Estate, 13 Fiduc. Rep. 408 (1963), the surviving joint tenant renounced any rights to the account, and testified clearly that he had been made a joint tenant with decedent solely for her convenience, so that through him her minor children would have access to the funds if she became disabled. In Grove Estate, 20 Fiduc. Rep. 27 (1969), the issue revolved about cash in a safe deposit box, where the printed lease contract for the box provided that upon the death of either lessee the survivor should be the sole owner of the contents; nevertheless, evidence was admitted to show that the surviving cotenant was a disabled sister of decedent to whom he intended to provide access only, to meet the possibility of his own disability. Similar results involving joint accounts clearly created to deal with the *original owner's* actual or anticipated disability, were reached in Bartosh Estate, 19 Fiduc. Rep. 394 (1969), and in Driscoll Estate, 17 Fiduc. Rep. 439 (1967).

We do not quarrel with these decisions, but believe them inapplicable here. Section 241 of the Inheritance Estate Tax Act of June 15, 1961, P. L. 373, 72 PS §2485-241, taxes any transfer where property is held by two or more persons ". . . so that, upon the death of one of them, the survivor or survivors have a right to the immediate ownership or possession and

enjoyment of the whole property. . . ." The taxable event is the accrual of such right upon the death of one of the owners. While this statutory language does not apply if what appears to be a joint tenancy clearly is not, it cannot be avoided simply because the joint owners do not die in the anticipated order. It is perhaps unfortunate that Ethel F. Davis will be taxed for regaining the full ownership of property which only a few years ago already was owned by her. But this does not change the fact that she is acquiring the same valuable legal right in the property that her brother would have acquired if she had died first.

The Commonwealth has cited Commonwealth v. Nolan's Estate, 345 Pa. 98. The evidence of a lack of donative intent was stronger there than in the present case; there was definite testimony that the surviving joint tenant never claimed an interest in the account, never wanted to use the money except for the original owner's benefit, and that all of the withdrawals made by her were, in fact, so used. Even if the Nolan rule has been somewhat softened by Berdar Estate, 404 Pa. 93, and Rogan Estate, 404 Pa. 205, the present case does not come within it. In Berdar, the original owner clearly had no wish to give the cotenant more than access to the fund, and did not realize, as Ethel F. Davis did here, that the procedure he followed gave the cotenant immediate rights in the funds. In Rogan, there was some doubt that the alleged donor had even signed the signature cards, and the gift issue was clouded by improper conduct of trial counsel in his examination of the surviving cotenant; there was also substantial evidence that the account was one of convenience.

Even more to the point is Burns Estate, 11 Fiduc. Rep. 259 (1961), which is similar factually in many respects to the present case. The transfers from the

original sole owner into joint ownership were as explicit as the present ones; the original owner retained all documents relating to the transfers; there was no activity in the transferred accounts by the transferee, who was, as here, the first to die. The Orphans' Court of Philadelphia said, p. 263, ". . . The evidence offered to the contrary (against the validity of the joint tenancy) is insufficient to destroy the express words of the contract. No evidence of fraud, accident or mistake has been produced. Therefore, the parties are bound by this contract. It is clear." Pointing out that the problem actually reduces itself to the fact that events did not occur as expected, the court added, page 264: "In law, as in everyday affairs, it is a truism 'You can't have both the penny and the cake.' Helen B. Burns wished to give her brother, the decedent, the rights and privileges of a joint tenancy with right of survivorship in the savings account and in the building and loan shares. This would have saved him inheritance tax in respect of an assessment on only one-half of the property, if she had died first . . . Since her brother's death gave rise to the appraisement and assessment of tax on his estate, and he did not provide a 'tax-free' clause in his will as to extra-testamentary property, it follows that neither Helen nor her estate can escape the burden and liability of payment of the appropriate taxes as initially ensued at the brother's death: . . . ." The same rule applies here.

The transfer of real estate requires much less discussion. As previously noted, the concept of "convenience" has no place in explaining such a transfer. Decedent could have lived just as well with his sister in her house, as in their house. No attack on the deed has been made on account of fraud, accident or mistake. It is doubtful that any contention based on a lack of donative intent alone could, or should, be considered in the light of this proper, completely and

knowingly executed deed, because of the parol evidence rule. Therefore, the transaction cannot be avoided simply to save inheritance taxes.

Nor does "convenience" have any real place in analyzing the situation as to the U. S. Bonds. Such securities are not used, as is a bank account, to pay for the routine, day-to-day activities of the household; here, they do not even represent periodic income for the most part, because the majority were of the Series "E" type. And our previous observations concerning the lack of convincing proof that Ethel F. Davis had no donative intent when she transferred her assets into joint names apply with equal force here. Therefore, we make the same findings as to the U. S. Bonds as in the previous two situations, and thus find it unnecessary to pass upon the contention of the appellant, based on Neglia Estate, 403 Pa. 464, and Eckert v. Eckert, 19 Fiduc. Rep. 558 (1969), that we have the power to determine otherwise, even in the face of U. S. Treasury Regulations providing that, in the absence of actual fraud, payment of jointly-held U. S. Bonds *must* be made to the survivor.

In respect to one item, however, the Commonwealth has made a basic error. It has taxed the Philadelphia Savings Fund Society account, as above noted, at its full value, rather than at one-half, because it was placed in joint names within two years of decedent's death. But the theory of a gift in contemplation of death cannot be applied here even presumptively, because decedent is the donee, not the donor. Under no view did Ethel F. Davis receive more than a one-half interest in this account at her brother's death. Therefore, as to this item only the appeal is sustained and the appraised value of Account No. K1101803 in the Philadelphia Savings Fund Society is reduced from $3,554.46 to $1,777.23. In all other respects, the appeal is dismissed.