Frank DeSANTIS, Personal Representative of the Estate of Helen K. Chum, Appellee

v.

William PROTHERO, Individually and as Administrator of the Estate of Helen Prothero, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 17, 2006.

Filed Jan. 9, 2007.

David B. Keeffe, Sayre, for appellant.

R. Joseph Landy, Sayre, for appellee.

BEFORE: MUSMANNO, TODD, and TAMILIA, JJ.

OPINION BY TODD, J.:

¶ 1 William Prothero, individually and as administrator of the estate of Helen Prothero, appeals the order entered November 10, 2005 by the Bradford County Court of Common Pleas granting Appellee Frank DeSantis', the personal representative of the Estate of Helen Chum, motion for judgment on the pleadings and directing Appellant to turn over the savings bonds at issue to Appellee within 30 days. We affirm.

¶ 2 In April 1986, Appellant and his mother, Helen Prothero ("Prothero"), traveled to Hawaii to visit Prothero's aunt, Helen K. Chum. During the visit, Chum gave Prothero a number of United States Series E and EE savings bonds registered in the name of Chum and her late husband, Andrew S. Chum, Jr. Although she was given possession of the bonds, they were not formally signed over to her.

Prothero took the bonds, which had a value of approximately $415,650, home with her to Bradford County, Pennsylvania, where she kept them in a closet for nearly 14 years. Prothero died on September 6, 2000. Chum died nearly two years later, in June 2002.

¶ 3 In 2003, Appellant filed petitions in the Orphans' Court seeking to compel Appellee, the administrator of Chum's estate, to sign over ownership of the savings bonds. On March 18, 2004, the court denied Appellant's motion on the basis that it was bound by federal law governing bonds and, therefore, lacked jurisdiction over the matter. On appeal, this Court affirmed the trial court's order, and our Supreme Court denied Appellant's subsequent petition for allowance of appeal. *In the Matter of the Estate of Helen Prothero,* No. 598 MDA 2004, unpublished memorandum, 873 A.2d 777 (Pa.Super. filed February 11, 2005), *appeal denied,* 584 Pa. 702, 882 A.2d 1006 (2005).

¶ 4 On or about June 17, 2005, Appellee filed a replevin action in the Bradford County Court of Common Pleas seeking the return of the savings bonds. Appellant filed an answer and new matter, wherein he alleged a legal and/or equitable ownership right to the bonds by virtue of an *inter vivos* gift between Chum and Prothero. Thereafter, Appellee filed an answer and a motion for judgment on the pleadings, asserting that the doctrine of federal preemption precluded Appellant's claim of an *inter vivos* gift of the legal or equitable ownership of the bonds. On November 10, 2005, the trial court granted Appellee's motion for judgment on the pleadings, and this appeal followed, wherein Appellant asks this Court to consider the following issues:

1. Has Pennsylvania's long standing common law rule announced in the case of *In Re: Neglia's Estate* per-

mitting the *inter vivos* gift of the equitable ownership of the proceeds associated with U.S. Savings Bonds been [overruled]?

2. Do United States Treasury Regulations preempt Appellant's state law rights to rely on an *inter vivos* gift of the proceeds of United States savings bonds where the asserted gift does not impair the survivorship provisions of the Treasury Regulations?

3. Should the amendment of pleadings under the Pennsylvania Rules of Civil Procedure [be] liberally allowed in order to secure determination of the case on the merits in order to prevent the case from turning on purely technical objections or points of law?

4. Did the trial court improperly ignore the Principle of Stare Decisis in ignoring the precedential effect of the long standing Supreme Court Opinion in *In Re: Neglia's Estate?*

(Appellant's Brief at 4 (citations omitted).)

¶ 5 Our scope and standard of review in an appeal of an order granting a motion for judgment on the pleadings is well settled: this Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. *Lewis v. Erie Ins. Exch.*, 753 A.2d 839, 842 (Pa.Super.2000), *aff'd*, 568 Pa. 105, 793 A.2d 143 (2002). We must determine whether "the trial court's action respecting the motion for judgment on the pleadings 'was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.' " *Id.* We will affirm the grant of judgment on the pleadings only if "the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise." *Id.* (internal quotation marks omitted).

¶ 6 In granting Appellee's motion for judgment on the pleadings, the trial court concluded that pursuant to Title 31 of the Code of Federal Regulations ("CFR"), the savings bonds are the property of the Estate of Helen Chum, and that under Section 315.20(a) of that title, any judicial determination giving effect to an attempted voluntary *inter vivos* transfer of such bonds to Prothero or her estate would not be recognized by the Treasury Department. In addition, the trial court rejected Appellant's argument that such a transfer is permitted by virtue of the Pennsylvania Supreme Court's decision in *In re Neglia's Estate*, 403 Pa. 464, 170 A.2d 357 (1961), noting: (1) that *Neglia* dealt with *proceeds* of savings bonds or the monetary value represented by the bonds; (2) that Appellant had failed to assert a counterclaim for the proceeds or monetary value of the bonds [1]; and (3) that because *Neglia* was in conflict with federal law regarding attempted *inter vivos* transfers of savings bonds, the United States Supremacy Clause [2] precluded the Court

---

1. It is this determination that is the basis for Appellant's third issue on appeal, namely, that the trial court erred as a matter of law in denying Appellant's request to amend his pleadings to include a claim of ownership of the *proceeds* of the bonds. In view of our disposition and for the reasons set forth *infra*, we hold that the trial court did not err in this regard.

2. As the Pennsylvania Supreme Court explained in *Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 589 Pa. 296, 908 A.2d 875 (2006),

The Supremacy Clause of the United States Constitution controls federal preemption. U.S. Const. Art. VI, cl.2. Congress has the undisputed power to preempt state law in areas of federal concern. Such preemption does not need to be explicit in a statute

from following *Neglia*, even if applicable to the facts of this case. As we discern no error of law by the trial court, nor the existence of any facts which should have been determined by a jury, we conclude that the trial court properly granted Appellee's motion for judgment on the pleadings.

¶ 7 Preliminarily, we note that Appellant's first, second, and fourth issues are so intertwined that we address them as one issue. Essentially, Appellant argues that, pursuant to *Neglia*, an *inter vivos* gift of equitable ownership of the *proceed* s associated with United States savings bonds is permissible; that the Supremacy Clause does not preclude the trial court's reliance on *Neglia* because there is no conflict between *Neglia* and federal law; and, as a result, that the trial court violated the principles of *stare decisis* [3] in refusing to follow *Neglia*. For the following reasons, we reject all of Appellant's arguments.

¶ 8 In *Neglia*, the personal representative of the Estate of Mary Neglia filed a petition for declaratory judgment to determine the ownership of 13 United States Series E savings bonds as between the decedent's husband and her brother. The bonds had been purchased by the decedent and were issued to the decedent and her brother as co-owners. Before she died, the decedent, intending to gift the bonds to her husband, endorsed them and gave possession of them to her husband. She did not, however, appear before an officer authorized to certify requests for payment, and she did not execute the Treasury Department forms required for re-issuance or transfer of the bonds. The trial court held that the bonds belonged to the decedent's brother. On direct appeal, our Supreme Court explained:

'When the Treasury Department, acting under Congressional fiat, sold these [United States Series E savings] bonds to the decedent it did so under an agreement, upon which decedent, at least presumptively, relied, that in the event the bonds were not surrendered and payment received prior to the decedent's death, the surviving co-owners named in such bonds would be recognized as the *sole and absolute* owners of such bonds. The issuer of the bonds, i.e., the United States Government, covenanted with the decedent through the medium of the Treasury regulations, that, upon the registration of the bonds in co-owner form, such registration would be *conclusive* of the ownership and interest in the bonds. Upon the basis of that contract and agreement between the Government and the decedent the named surviving co-owners of these bonds, as third party beneficiaries, seek to establish their rights to the bonds. The rights of the surviving co-owners in these bonds arise not from a sale, a gift or a devise: they

invalidating a state law. If the area in question is one of traditional state concern, it should be presumed that Congress did not intend to supersede state authority absent a clear and manifest legislative purpose to the contrary.
*Id.* at 880 (citations and footnote omitted).

**3.** Our Supreme Court has explained the concept of *stare decisis* as follows:
The basic legal principle of *stare decisis* generally commands judicial respect for prior decisions of this Court and the legal rules contained in those decisions. As recently noted by the United States Supreme Court, "*stare decisis* promotes the even-handed, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."
*Stilp v. Commonwealth of Pennsylvania*, 588 Pa. 539, 905 A.2d 918, 954 n. 31 (2006) (citations omitted).

arise exclusively from the contract between decedent and the Government.

'The design of the Treasury regulations is two fold: (1) 'to prevent [the] Government from being involved in suits between claimants to Government bonds' and (2) 'to protect the interests of the bondholders of these 'thrift' securities by preventing transfers'. Regardless of the purpose or purposes of these regulations it is manifest that they enunciate a rule as to the ownership of this particular species of property in reliance upon which thousands upon thousands of individuals have purchased these bonds; to substitute a nebulous for a certain rule would create a condition which could conceivably interfere with the borrowing power of the Government.'

403 Pa. at 468, 170 A.2d at 358–59 (quoting *In re Cochran's Estate,* 398 Pa. 506, 515–516, 159 A.2d 514, 519 (Pa.1960) (citations omitted)).

¶ 9 Notwithstanding the above, our Supreme Court went on to state that

[a]s between the Government and the co-owner designated on the bond, by reason of the contract of purchase, payment *must* be made by the Government to such bond-designated co-owner. That is all that the federal regulations require and we so determined in *[In re Cochran's Estate.]* Once the Government has made payment of the bond, the impact of the federal regulations terminates: the federal regulations do not purport to control nor do they control the eventual disposition of the *proceeds* of the bond.

*Neglia,* 403 Pa. at 468–69, 170 A.2d at 359 (emphasis original). The Court in *Neglia* concluded that the decedent had made a

valid inter vivos gift of the savings bonds to her husband, and, therefore, that her husband, not her brother, was the owner of the proceeds of the bonds.[4] It is this language on which Appellant herein relies for his claim that he is entitled to the proceeds of the bonds.

¶ 10 Subsequent to the Pennsylvania Supreme Court's decision in *Neglia,* however, the United States Supreme Court held, in *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), that, absent fraud, the regulations creating a right of survivorship in United States savings bonds issued in co-ownership form overrides and/or pre-empts any inconsistent state property law. Mary Ida Free and her husband, J.W. Free, were domiciled in Texas, a community property state. During their marriage, Mary Ida purchased Series E and F United States Savings Bonds with community property. The bonds were issued to "Mr. or Mrs. Free." Upon Mary Ida's death, a controversy arose between her husband, who claimed exclusive ownership by operation of the Treasury Regulations providing that when the co-owner of the bonds dies, the survivor will be recognized as the sole and absolute owner, and the decedent's son from a prior marriage, who was the principal beneficiary under the decedent's will and who claimed an interest in the bonds by virtue of the state community property laws. The decedent's son sought one-half of the bonds or, alternatively, reimbursement for the loss of his mother's community half interest in the bonds. The decedent's husband filed suit against the decedent's son individually and as executor of the decedent's estate, and the decedent's son filed a counterclaim.

---

4. The Court stressed that it was not taking, and indeed could not take, "coercive action" by ordering the Treasury Department to reissue the bonds in the husband's name, and noted that "[i]f necessary, in a suitable coercive action, appropriate disposition of the proceeds of the bonds can be accomplished." *Neglia,* 403 Pa. at 471, 170 A.2d at 360.

¶ 11 On his motion for summary judgment, the trial court awarded full title to the bonds to the husband on the basis of the federal regulations, but awarded reimbursement to the son on the basis of the state community property laws, making the bonds security for payment. The appellate court affirmed the trial court's award of full title to the husband, but reversed the award of reimbursement to the son. While an appeal was pending with the Supreme Court of Texas, that same Court decided the case of *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565 (1961), wherein it held that married couples in Texas would not be permitted to agree to any survivorship provision with regard to community property, and dismissed the argument that the Supremacy Clause would compel recognition of the survivorship provision in United States savings bonds, stating "[i]t is clear that the Federal regulations do not override our local laws in matters of purely private ownership where the interests of the United States are not involved." *Id.* at 570. Thereafter, the Texas Supreme Court reversed the order of the appeals court in *Free* based on its holding in *Hilley*, and reinstated the judgment of the trial court.

¶ 12 On appeal, the United States Supreme Court reversed the Texas Supreme Court's decision, and in doing so stated:

The Supreme Court of Texas' interpretation of the Supremacy Clause is not in accord with controlling doctrine. The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail. Article VI, Clause 2. This principle was made clear by Chief Justice Marshall when he stated for the Court that any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal

law, must yield. Thus our inquiry is directed toward whether there is a valid federal law, and if so, whether there is a conflict with state law.

*Free*, 369 U.S. at 666, 82 S.Ct. 1089 (citation omitted).

¶ 13 The Court then noted that, in accordance with authority provided by Congress,

the Secretary of the Treasury issued savings bonds under regulations which provided, inter alia, that the co-owner of a savings bond issued in the 'or' form who survives the other co-owner 'will be recognized as the sole and absolute owner' of the bond, 31 C.F.R. [§ ] 315.61, and that '(n)o judicial determination will be recognized which would * * * defeat or impair the rights of survivorship conferred by these regulations,' 31 C.F.R. [§ ] 315.20. The Treasury has consistently maintained that the purpose of these regulations is to establish the right of survivorship regardless of local state law, and a majority of the States which have considered the problem have recognized this right. The respondent, however, contends that the purpose of the regulations is simply to provide a convenient method of payment. This argument depends primarily on the distinction between stating that the surviving co-owner will 'be recognized as' the sole owner and stating that the surviving co-owner will 'be' the sole owner. This distinction is insubstantial. The clear purpose of the regulations is to confer the right of survivorship on the surviving co-owner. Thus, the survivorship provision is a federal law which must prevail if it conflicts with state law.

*Id.* at 667–68, 82 S.Ct. 1089 (footnotes omitted).

¶ 14 Finally, the United States Supreme Court condemned the Texas Supreme

Court's attempt to circumvent the federal regulations by ordering the decedent's husband to reimburse the decedent's estate for one-half of the value of the bonds:

The success of the management of the national debt depends to a significant measure upon the success of the sales of the savings bonds. The Treasury is authorized to make the bonds attractive to savers and investors. One of the inducements selected by the Treasury is the survivorship provision, a convenient method of avoiding complicated probate proceedings. Notwithstanding this provision, the State awarded full title to the co-owner but required him to account for half of the value of the bonds to the decedent's estate. Viewed realistically, the State had rendered the award of title meaningless. Making the bonds security for the payment confirms the accuracy of this view. If the State can frustrate the parties' attempt to use the bonds' survivorship provision through the simple expedient of requiring the survivor to reimburse the estate of the deceased co-owner as a matter of law, the State has interfered directly with a legitimate exercise of the power of the Federal Government to borrow money.

*Id.* at 669, 82 S.Ct. 1089 (footnote omitted).

¶ 15 Almost ten years after its decision in *Free*, the United States Supreme Court again had occasion to consider the impact of the federal regulations on the transferability of Series E savings bonds in *United States v. Chandler*, 410 U.S. 257, 93 S.Ct. 880, 35 L.Ed.2d 247 (1973). In *Chandler*, the decedent had purchased several Series E savings bonds, which were issued in co-ownership form, in the name of the decedent and one of her two granddaughters. In 1961, the decedent delivered the bonds to the respective granddaughters, with the intention of making complete, irrevocable *inter vivos* gifts. At the time of the decedent's death in 1962, the bonds were still in the original co-ownership form, had not been redeemed, and had not been reissued solely in the granddaughters' names. The executors of the decedent's will disclosed the bonds in the federal estate tax return filed for the decedent's estate, but did not include them in the gross estate.[5] Following an audit, the Internal Revenue Service ruled that the bonds were includable, and an estate tax deficiency was assessed on and paid for by the executors of the will. The executors then filed suit seeking a refund of the tax attributable to the inclusion of the bonds in the decedent's gross estate.

¶ 16 In its opinion, the Supreme Court noted that under 31 C.F.R. § 315.20(a), "[n]o judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond" and that Section 315.60 provided that

a savings bond registered in co-ownership form will be paid, during the lives of both co-owners, 'to either upon his separate request,' in which case the other 'shall cease to have any interest in the bond,' or will be reissued, during the lives of both co-owners, upon the re-

5. The Supreme Court noted that at the time of the decedent's death, Section 2040 of the Internal Revenue Code of 1954 provided, in relevant part, that "there shall be included in a decedent's gross estate, with exceptions not here pertinent, 'the value of all property ... to the extent of the interest therein held as joint tenants by the decedent and any other person ... in their joint names and payable to

either or the survivor....' " *Chandler*, 410 U.S. at 259, 93 S.Ct. 880 (quoting 26 U.S.C. § 2040.) While there appears to us an incongruity between Section 2040, and the inducement of the bonds in "avoiding complicated probate proceedings," as recognized *Free*, 369 U.S. at 669, 82 S.Ct. 1089, that issue does not alter our disposition herein.

quest of both, in the 'name of either, alone or with a new co-owner or beneficiary,' if, in the case of reissuance, the co-owners possessed one of a number of specifically enumerated relationships, including 'grandparent and grandchild.'

*Id.* at 260, 93 S.Ct. 880 (quoting 31 CFR §§ 315.20(a) and 315.60). Thus, the Court noted that the regulation made jointly issued bonds nontransferable in themselves, and permitted a change in ownership, so long as both coowners were alive, only through re-issuance at the request of both co-owners. *Id.*

¶ 17 The Court then concluded that the decedent's delivery of the bonds to her granddaughters, even where accompanied by donative intent, *was not sufficient to remove the bonds from her gross estate:*

> We have no reason to rule against the integrity and effect of the regulations. The issuance of the bonds by the Secretary, subject to such 'restrictions on their transfer' as the Secretary may prescribe, was clearly authorized by the Congress in 31 U.S.C. § 757c(a). And the restrictions on their transfer were just as clearly spelled out by the Secretary in his regulations. No claim is made—and none could be made—that the regulations are unclear or inapplicable to [the decedent's] purported transfers. Nor can we view the regulations as an undue or improper restriction of the transfer rights the decedent would otherwise have. The bonds were issued subject to transfer restriction, and those restrictions, in the eyes of the law at least, were known to her. She could have had the bonds issued originally in the sole names of the grandchildren, but she chose the co-ownership form and, as her later attempts at transfer reveal, she chose to retain possession of them. Having done so, she was obligated to play the game according to the rules.

The decisions below also overlook the facts that until her death, the decedent retained the right to redeem each of the bonds in question, the right to succeed to the proceeds if she survived the putative donee, and the right to join or to veto any attempt to have the bond reissued.

\* \* \*

Our conclusion, we feel, is required by the holding in *Free v. Bland, [supra.]* There the Court held that, absent fraud, the regulations creating a right of survivorship in United States Savings Bonds issued in co-ownership form overrode or preempted any inconsistent state property law. We stressed there, as we do here, that a contrary result would fail 'to give effect to a term or condition under which a federal bond is issued.'

*Chandler,* 410 U.S. at 261–62, 93 S.Ct. 880.

¶ 18 Pursuant to the United States Supreme Court's decision in *Free,* it is clear that, under the Supremacy Clause, the federal regulations regarding the right of survivorship in United States savings bonds preempt any conflicting state law regarding the same. Furthermore, under the United States Supreme Court's holding in *Chandler,* delivery of savings bonds by the sole owner to another individual with the intent of making a gift of the bonds is insufficient to divest the owner and/or his estate from ownership of the bonds. Thus, to the extent that the Pennsylvania Supreme Court's decision in *Neglia* suggests that the federal regulations do not bar Appellant's recovery of the proceeds of the bonds, provided he can establish a valid *inter vivos* gift between Chum and Helen Prothero, we conclude that there is indeed a conflict with the federal law, and that the federal law must prevail. Accordingly, we conclude that *Neglia* has,

effectively, been overruled by the United States Supreme Court in this regard.[6]

¶ 19 Finally, to the extent Appellant asks this Court to make a distinction between ownership of the actual bonds versus the proceeds of the bonds, we believe Appellant seeks relief similar to that provided by the trial court in *Free*—namely, awarding full title to the co-owner identified on the bonds, but requiring him to reimburse the decedent's estate for a portion of the value thereof—which was condemned by the United States Supreme Court. Were this Court to hold, as Appellant herein requests, that he is entitled to the proceeds associated with the bonds, we would, as the United States Supreme Court stated, "render[ ] the award of title meaningless." *Free*, 369 U.S. at 669, 82 S.Ct. 1089. As was the case in *Chandler*, the bonds were issued to Chum subject to transfer restrictions which, in the eyes of the law, were known to her; she could have had the bonds reissued in the name of Prothero, but she did not. Regardless of her intent, her failure "to play the game according to the rules," *Chandler*, 410 U.S. at 261, 93 S.Ct. 880, precludes any grant of relief to Appellant.

¶ 20 For all of the foregoing reasons, we find that the trial court properly granted Appellee's motion for judgment on the pleadings, and affirm the trial court's order of November 10, 2005.

¶ 21 Order **AFFIRMED.**

**6.** Accordingly, Appellant's *stare decisis* argument is without merit. *See* note 3, *supra*.